OPINION OF THE COURT
Maurice Harbater, J.
ISSUES
May the executor of the estate of a deceased rent-stabilized tenant stand in the same shoes as his testator, with the same right to assign the unexpired residential lease? Or, does section 226-b of the Real Property Law and its most recent interpretation by the appellate courts repeal, abrogate or modify the effects of the older statute, section 236 of the Real Property Law, regarding the assignment of a lease of a deceased tenant? The above are issues of first impression, heretofore not dealt with.
FACTS
Petitioner, Rosefan Construction Corp., owner and landlord of the multiple dwelling located at 110-45 71st Road, Forest Hills, entered into a standard form apartment lease prepared by the Real Estate Board of New York, Inc. *957 (copyright 1978) on July 23, 1980 with Bessie Ratner as a rent-stabilized tenant. Bessie Ratner, now deceased, was to occupy the one-bedroom apartment, 7-H, at the above-named premises for a term of three years commencing October 1, 1980 and ending September 30, 1983 at a monthly rental of $319.50.
Under covenant 18 of the lease agreement, any assignment or subleasing was to be made pursuant to section 226-b of the Real Property Law. The lease also contained the following covenant: “Successor Interests: 31. The agreements contained in the Lease shall be binding on and apply to the Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and, except as otherwise provided in the Lease, their assigns.”
The named tenant, Bessie Ratner, died on December 17, 1981. On January 14, 1982, Malcolm S. Ratner and Eleanor Sher were named coexecutors of the estate of Bessie Ratner. The estate, not a party to this proceeding, paid the January rent.
The respondents, Rose I. Salazar and Joseph R. Salazar, are the present occupants of apartment 7-H. Respondents maintain that they were sharing the apartment with the deceased, for a year preceding her death and that Mrs. Salazar was employed by the deceased as an in-house nurse assistant/housekeeper. Respondents further contend that they are newlyweds which they claim accounts for Joseph R. Salazar’s continuing maintenance of an apartment at 68-11 Burns Street, Forest Hills.
However, petitioner’s exhibits controvert both of respondents’ allegations that they are newlyweds and that the premises at 68-11 Burns Street was Mr. Salazar’s “bachelor” apartment. A Williamsburgh Savings Bank savings account card states that the account had been opened jointly by Joseph R. Salazar and Rosa Isabel Salazar May 24,1976. The address entered under the name of Joseph R. Salazar was 68-11 Burns Street. Rosa Isabel Salazar’s address was entered as “same” with her occupation given as a housewife.
A Williamsburgh Savings Bank checking account card opened jointly by the respondents April 29, 1980 contains *958 the savings account number in addition to the newly opened checking account number. The address entered is again 68-11 Burns Street with Rosa Salazar’s occupation given as a housewife.
By letter dated December 29, 1981, counsel for the respondents, Gellis & Melinger, by Jan Ira Gellis, purporting to represent the estate of the deceased, informed the petitioner of the estate’s intent to assign apartment 7-H to the respondents, then in occupation, pursuant to section 226-b of the Real Property Law. No other evidence has been offered by counsel for respondents that they at any time represented the estate of Bessie Ratner.
By letter dated January 7, 1982, counsel for the petitioner informed counsel for the respondents that the estate’s request to assign the premises to the respondents was rejected and petitioner considered the lease terminated. Respondents, thereafter, remaining in possession of apartment 7-H, attempted to pay February rent by personal check. Counsel for the petitioner returned the check with a letter dated February 3, 1982 advising the respondents that the assignment request was denied and that they should vacate the apartment. Respondents have not vacated.
ARGUMENTS
Petitioner contends that section 236 of the Real Property Law is the applicable law in this case and should be strictly followed. Petitioner further contends that the estate’s request to assign the premises permitted the petitioner to not only reject the request, but to terminate the lease at its option.
Respondents counter that under Francis v Ferguson (246 NY 516), a covenant restricting the tenant’s right to assign does not bind the executors of an estate unless the assignment provision explicitly includes the executors. Respondents further contend that the executors should be elevated to the rank of tenants, thereby requiring this court to apply the provisions of section 226-b and not section 236 of the Real Property Law.
*959 THE LAW
In Francis v Ferguson (supra), strongly relied upon by the respondents, the defendant landlord entered into a commercial lease with the tenant for a 10-year term at $16,000 rent per year for the first six years and $18,000 per year thereafter. The tenant died with five years remaining on the lease. Thereupon, the executors of the deceased tenant’s estate attempted to assign the lease. The landlord refused to consent to the assignment. In a declaratory judgment, the court concluded that an executor of an estate is exempted from a covenant restricting assignment unless the assignment provision explicitly includes the executor.
The Ferguson court concluded (p 519) that “[t]o interfere with the ordinary course of administration and compel them [the executors] to hold the leased premises until the expiration of the term, something more than casual general words without meaning should appear.”
Notwithstanding the no-assignment clause, the court refused to compel the estate to retain a commercial leasehold that would substantially interfere with the conversion of the assets. In effect, what the Ferguson court did was to release the estate from further liability under the lease — exactly what section 236 of the Real Property Law does for the estate today.
Though the objectives of the Ferguson court, to relieve the estate from the burden of the lease and further the orderly administration of the estate’s assets, are consistent with the objectives of section 236 of the Real Property Law, the commercial setting distinguishes it from the case at bar. Therefore, to apply the rule in Ferguson to a case concerning the assignment of a residential premises pursuant to section 236 of the Real Property Law would be improper. Especially in light of the statute’s explicit applicability to an executor.
Section 236 of the Real Property Law passed in 1965, provides in part: “Notwithstanding any contrary provision contained in any lease hereafter made which affects premises demised for residential use * * * the executor, administrator or legal representative of a deceased tenant under such a lease, may request the landlord thereunder to *960 consent to the assignment of such a lease * * * Within thirty days after the mailing of the request for consent, or of the additional information reasonably asked for by the landlord, whichever is later, the landlord shall send a notice to the sender thereof of his election to terminate said lease or to grant or refuse his consent. * * * If the landlord terminates said lease or unreasonably refuses his consent, said lease shall be deemed terminated, and the estate of the deceased tenant and any other tenant thereunder shall be discharged from further liability thereunder as of the last day of the calendar month during which the landlord was required hereunder to exercise his option.” (Emphasis added.)
Though section 236 of the Real Property Law leaves all the options to. the landlord, it adequately protects the interests of the estate. The estate is discharged from further liability once the landlord either terminates the lease or, by operation of law, if he unreasonably withholds his consent to an assignment request.
Respondents, however, are asking this court to go beyond the plain meaning of section 236 of the Real Property Law, which, by its terms, is specifically applicable to . the assigning of a deceased tenant’s lease, and interpose the parallel text of section 226-b of the Real Property Law. To do that would require the court to elevate the executor to the rank of tenant. That the court cannot do. The executors of an estate may occupy a premises in possession of an estate, but only in their representative capacities, not as tenants under the lease. (Remford Corp. v Rosenfeld, 274 App Div 769.) Though section 226-b of the Real Property Law does have an intention similar to section 236 of the Real Property Law to assist hard-pressed parties to get out from under unwanted leases or to cut their losses if forced to temporarily relocate, it applies only to a living tenant. (See Kruger v Page Mgt. Co., 105 Misc 2d 14, 27 [discussion of the legislative background to section 226-b]; Palmer v 309 East 87th St. Co., 112 Misc 2d 667; Conrad v Third Sutton Realty Co., 81 AD2d 50 [landlord unreasonably withholding consent held to be consent].)
Under section 226-b of the Real Property Law, the landlord’s refusal to consent to an assignment or sublease *961 without reason, or his unreasonable refusal, is deemed his “consent”. However, the clear language of section 236 of the Real Property Law rejects and repels such an interpretation for it clearly provides that “if the landlord terminates said lease or unreasonably refuses his consent, such lease shall be deemed terminated, and the estate of the deceased tenant and any other tenant thereunder shall be discharged from further liability thereunder”. Section 236 clearly gives the landlord the right to “unreasonably” refuse his consent which automatically terminates the lease and discharges the estate from further liability.
Section 236 of the Real Property Law is plain enough in its meaning. The statute is clear on its face to whom it applies, in what situation it applies, and its procedures. “It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature * * * and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 208). Therefore, the executors do not have unrestricted assignment powers, but are subject to the provisions of section 236 of the Real Property Law.
CONCLUSION
Before granting petitioner a final judgment of possession to the apartment, the court must first consider whether the lease to Bessie Ratner, which is still not due to expire until September 30, 1983, has been terminated, canceled, surrendered, or assigned.
If it is none of the above, then the estate of Bessie Ratner remains liable as well as having certain rights under the lease. “A lease for a term of years is not terminated by the death of the lessee prior to the expiration of the term” (Schnee v Jonas Equities, 109 Misc 2d 221, 222 [App Term, 2d Dept]).
The only scrap of evidence which might indicate that the estate of Bessie Ratner was now out of the picture was the letter from Gellis & Mellinger, Esqs., claiming they were the attorneys for the estate and wished to assign the lease to the respondents.
*962 Those attorneys are now (and may have been then) the attorneys for the respondents herein.
Over the vehement and repeated objections by the petitioner landlord, this court accepted the letter in evidence subject to connection and stated that it would give such letter the proper weight.
Now, at the end of the trial, this court gives no weight to the letter.
The purported attorney for the estate (and now respondents’ attorney) never testified that he or his firm were in fact the attorneys for the estate authorized to request an assignment of the lease to the respondents.
During the trial, the petitioner’s attorney suggested and implied that Mr. Gellis was not authorized by the estate to act in its behalf and challenged him to testify or in some other way prove that he had been. This the respondents’ attorney did not do.
Nor was there offered in evidence any written assignment by the estate to these respondents.
Nor could there be a valid oral assignment. An assignment of an estate or interest in real property for more than one year is void unless in writing. (General Obligations Law, § 5-703.)
Nor was there an assumption agreement from these respondents for the benefit of the estate and/or the landlord.
Nor were either of the two executors or any other relatives or interested parties in the estate of Bessie Ratner called to testify that the lease was terminated, canceled, surrendered or assigned.
Is there anything to prevent the estate of Bessie Ratner from coming forward some time in the future and claiming to be the rightful successor to the prime tenant? This court thinks not. (See Schnee v Jonas Equities, supra.) In fact, the executors, as bona fide successors in interest (pursuant to covenant 31), may, at their discretion, tender an offer to purchase shares in any co-operative offering plan. (Bunim v 300 CPW Apts. Corp., NYLJ, June 30, 1982, p 6, col 3.)
*963 The executors could easily state that the estate was never served with any papers, nor named as a party to any action or proceeding, and that they never requested the landlord’s permission to assign or to terminate the lease.
At this time, for all intents and purposes, this court must consider the lease still in existence and the estate of Bessie Ratner as a necessary and proper party to be named in any proceeding in which the landlord seeks legal possession.
Petitioner, during the trial and in its memorandum of law, steadfastly argued that the respondents are either squatters or mere licensees.
“To maintain summary proceedings under subdivision 3 of section 713 of the Real Property Actions and Proceedings Law, commonly known as ‘squatter proceedings’, it is essential that the occupant sought to be removed, or the person to whom the occupant has succeeded, intruded into or squatted upon the premises, in the first instance, without permission of the owner, his predecessor in title or one entitled to possession”. (Matter of Robbins v De Lee, 34 AD2d 870; Murawski v Melkum, 71 Misc 2d 575.)
The respondents clearly are not squatters. They did not intrude upon the premises in the first instance without the permission of the deceased tenant who was the party entitled to possession.
Nor are the respondents licensees of the petitioner since the “person entitled to possession of the property” is the estate of Bessie Ratner, and no proof has been submitted that respondents’ “licenses has expired” nor that their “license has been revoked by the licensor” nor that “the licensor [the estate] is no longer entitled to possession of the property.” (RPAPL 713, subd 7.)
Therefore, this court must dismiss the petition without prejudice.