■ HAMILTON COOPERATIVE APARTMENTS, INC., Respondent, v JOEL SIEGEL, Appellant.—In an action, *inter alia,* to declare that defendant Joel Siegel unlawfully occupied an apartment in plaintiff's Federally insured cooperative housing project, defendant appeals from a judgment of the Supreme Court, Kings County (Vaccaro, J.), dated November 9, 1983, which, after a nonjury trial, *inter alia,* declared that defendant had violated the occupancy agreement and bylaws and ordered him to vacate the subject apartment forthwith and offer his stock to plaintiff for sale.

Judgment affirmed, with costs.

Plaintiff, Hamilton Cooperative Apartments Inc., is the owner of the premises known as 221 McDonald Avenue, Brooklyn, New York. The cooperative apartments were erected pursuant to the provisions of the National Housing Act, title II, § 213 (12 USC § 1715e) and the rules and regulations published thereunder.

The record herein discloses that in 1952, defendant's mother, Mrs. Rose Siegel, occupied with her then husband, one Michael Marzo, a cooperative apartment in the premises owned by plaintiff. Although Mrs. Siegel was divorced from Mr. Marzo in 1957, she occupied the aforesaid cooperative apartment continuously until her death in May of 1981. The stock originally allocated to the apartment was issued in Mrs. Siegel's name and the name of her ex-husband. The only occupancy agreement relating to the subject apartment, however, was one which named Mr. Marzo as tenant. On or about December 1, 1961, at the request of Mrs. Siegel, plaintiff issued the stock allocated to the subject apartment in the names of "Rose & Joel I. Siegel, jointly with the right of survivorship". After the stock was issued, plaintiff cooperative never issued a new occupancy agreement to Mrs. Siegel or her son, the defendant, nor was one ever requested. The record further establishes that defendant Joel Siegel lived with his mother in the subject apartment until he married in 1962 and established a marital domicile elsewhere. In 1979, defendant was separated from his wife. According to defendant, after the 1979 separation, he moved back into the subject apartment with his mother and resided there continuously to date, while his wife remained in the former marital domicile. According to defendant, his mother became quite ill during the last six months of her life and he cared for her until she died in May

of 1981. After defendant's mother's death, an officer of plaintiff cooperative contacted defendant Siegel in order to determine his intentions with respect to the subject apartment. Defendant indicated that he intended to reside in the apartment. Defendant was informed, however, that he would not be permitted to occupy the apartment because he did not have an occupancy agreement. Defendant refused to vacate the premises.

By summons and complaint dated November 30, 1981, plaintiff cooperative commenced the instant action, *inter alia,* seeking a judgment that defendant be required to vacate and surrender possession of the subject apartment forthwith. A trial was held at which defendant sought to establish, *inter alia,* that he had in fact resided in the apartment prior to his mother's death. Trial Term, nevertheless, rendered judgment in favor of the plaintiff cooperative. Trial Term rejected defendant's contention that he had resided in his mother's apartment prior to and at the time of her death in 1981. The court also rejected the contention that defendant's stock ownership alone entitled him to occupancy of the subject apartment.

On appeal, defendant argues that Trial Term erred in finding that he did not reside with his mother at the time of her death; that his stock ownership entitles him to an occupancy agreement under the bylaws; and that, in any event, plaintiff cooperative cannot equitably deny him a rental contract since, under its own bylaws, it was required to issue him and his mother a lease when the stock was reissued in 1961. We cannot agree and therefore affirm.

Trial Term, in a finding amply supported by the record, determined that defendant was not in residence in the subject apartment at the time of his mother's death. The testimony adduced upon cross-examination of defendant with respect to the various indicia of residence, i.e., the addresses listed on defendant's automobile license and registration, his income tax returns, and his checking and bank accounts, and even the address he listed on his mother's death certificate, reveal a residence other than the cooperative apartment. Moreover, at trial, it was developed that one of the checking accounts maintained by defendant, a joint account with his mother, reflected an address at 7215 Rost Place, Brooklyn, New York. It was further developed at trial that during the period between defendant's departure from the marital domicile in 1979 and his mother's death in 1981, a check was drawn on the Rost Place account each month in the amount of $280

payable to the owner of premises located at that address. When confronted with the checks, defendant claimed that he was paying rent for a "friend" who was unable to obtain a checking account. The record disclosed, however, that the telephone number at the Rost Place address was under defendant's name, that he paid the utility and telephone expenses thereat and that he had purchased furniture and a mattress for that apartment. When asked to explain why the rental payments ceased just after his mother's death, defendant testified that he had broken up with his "friend" at that time. In light of the foregoing, it cannot be said that Trial Term erred in declining to credit the defendant's contention that he resided with his mother in the cooperative apartment prior to her death. He cannot, therefore, premise his entitlement to continued occupancy upon his status as an immediate family member in residence (cf. *McCorkle Coop. Apts. v Gross,* 54 AD2d 753, 754, *affd* 43 NY2d 765; *Mainstay Coop. Section Two v Hroch,* 122 Misc 2d 541, 542, *affd* 105 AD2d 695).

Alternatively, defendant relies upon his ownership of the stock allocated to the apartment, in conjunction with paragraph 9 of article VIII of the bylaws, which states, in pertinent part, that "[e]ach Common Stockholder shall be issued a Rental Contract". Defendant argues that the aforesaid bylaw provision now requires plaintiff cooperative to issue him a rental contract since the stock allocated to the apartment had been issued to him and his mother in 1961 and he now owns said stock. We disagree. Paragraph 9 does not require the plaintiff cooperative to offer successive terms of occupancy to a former tenant who, after terminating his residence at the cooperative complex, chooses to retain his stock. If such were the case, the cooperative board of directors would be in large measure deprived of its ability to select its tenant population, since former tenants could, theoretically, return at any time and demand a lease. Further, the board's ability to establish entitlement to available apartments through the use of waiting lists and other means of creating priorities among applicants would be frustrated.

Finally, although no rental contract pursuant to paragraph 9 was issued to the Siegels subsequent to the issue of the stock in 1961, defendant and his mother were, nevertheless, afforded the tenancy to which they were otherwise entitled as stockholders and resident immediate family members of Mr. Marzo. Defendant, however, chose to terminate his occupancy at the subject apartment and establish a domicile elsewhere. Under these circumstances, his ownership of stock does not require

the plaintiff cooperative to offer him a rental contract now. Lazer, J. P., Brown, O'Connor and Weinstein, JJ., concur.