OPINION OF THE COURT
Sidney Rosen, J.
This case appears to present an issue as yet undetermined by our courts, namely, the right of a "live-in mate” of a shareholder of a Federally insured cooperative to continued occupancy of the co-op apartment after the decease of the tenant/shareholder.
The petitioner, relying on the provisions of its bylaws and *974 occupancy agreement, seeks a judgment of possession in this proceeding asserting that respondent is not a member of the immediate family of the tenant/cooperator and, therefore, not entitled to remain in possession.
Concourse Village, Inc., is a cooperative housing corporation organized pursuant to the Limited-Profit Housing Companies Law of New York (Private Housing Finance Law § 10 et seq.). It is subject to the provisions of that law as well as the rules and regulations governing city-aided limited profit housing companies administered by the Department of Housing and Community Renewal (DHCR). As a Federally insured cooperative, its bylaws and occupancy agreements are required to conform to and be approved by the Department of Housing and Urban Development (HUD), and are based upon the regulations originally promulgated by the Federal Housing Administration (FHA) now known as the Department of Housing and Urban Development (HUD).
The pertinent provisions of the bylaws are as follows:
"Article VI, § 4. Bequeathing of Apartments.
"In no event may the right of occupancy in a Mitchell-Lama cooperative be bequeathed to another. Upon the death of the tenant/cooperator, the shares must be returned to the mutual company which will arrange for a sale pursuant to Section 1 of Article VI of these regulations. Notwithstanding the foregoing, eligible members of the tenant/cooperator’s immediate family in occupancy may acquire such shares if they meet the requirements of Article II, Section 16 of these regulations.”
Article II, § 16 provides: "For the purpose of this article, immediate family shall mean parents, spouses and children, including adopted children, of the tenant/cooperator.”
The foregoing provisions are set forth in the occupancy agreement as well as on the stock certificate issued by the corporation.
In the fall of 1975, Howard Primm purchased the shares of stock in the cooperative entitling him to an occupancy agreement for apartment 22M at the premises in question, 779 Concourse Village East, Bronx, New York. He was the only person named in the said agreement and was the sole owner of record of the shares of stock. The respondent, Floree Bilotti, moved into the apartment together with him and they cohabited as husband and wife until Mr. Primm’s death on December 27, 1985. Throughout the 10 years of such occupancy, they held themselves out to management, its employees and neigh *975 bors as husband and wife, traveled together as such and received mail at the residence in the names of Mr. and Mrs. Howard Primm. At the time of the purchase of the apartment, Mr. Primm was a retired individual, 64 years of age and Mrs. Bilotti approximately 62 years of age. At the hearing conducted by the court in this matter, respondent claimed to have contributed to the purchase price of the cooperative, but was unable to produce proof to that effect, but did testify that she was present at the purchase negotiations. It also appears that respondent is the executrix and sole beneficiary under the will of Mr. Primm.
The management of the cooperative first became aware of the fact that the respondent and Mr. Primm were not married when a daughter of Mr. Primm advised them of that fact after his death. Apparently, both Mr. Primm and Mrs. Bilotti were separated from their respective spouses for many years before they commenced living together at Concourse Village.
In examining the underlying purpose for the promulgation of the rules by FHA restricting as it did the transfer of the right to occupancy to "immediate family” it was apparent that the emphasis was placed not on the relationship of the parties but rather on the contemporaneous residence by them. Thus, there have been numerous cases involving close blood relatives who have been denied the right to succeed to possession of the co-op apartment because they have failed to prove residence with the tenant/cooperator at the time of death or when there was a vacatur of the apartment. (McCorkle Coop. Apts. v Gross, 54 AD2d 753, affd 43 NY2d 765; Hamilton Coop. Apts. v Siegel, 113 AD2d 738; Knolls Coop. Section No. 2 v Lehner, 50 AD2d 898; Ocean Ridge Coop. Apts. v Keltz, NYLJ, Oct. 1, 1986, p 14, col 2.)
In his article "National Housing Act § 213 and 'Immediate Family’ Dilemma” (NYLJ, Oct. 22, 1986, p 1, col 3), Prof. Menachem L. Kastner cited several FHA letter rulings which contained significant language in our quest for a judicial determination of the issue presented in this proceeding. Quoting from a letter dated May 4, 1956 of the Chief Counsel of the Cooperative Housing Section of FHA, Harry E. Johnson, as follows: " 'It is the understanding of this office that it was the administrative intent that the language "member of his immediate family” would be applied to a resident of the dwelling unit of the deceased member. In other words, even though the legatee or distributee of the deceased member might be a close-blood relative he should also be a resident of *976 the dwelling unit to qualify as a member of the decedent’s immediate family for the purpose of obtaining the right of occupancy of the decedent’s dwelling unit. On the other hand, a cooperative might find it appropriate to accept under this provision a person who was a resident of the dwelling unit and considered a member of the family. In other words, this Administration anticipated that there should be a continuity of occupancy by the members of decedent’s household who had in fact resided in the unit with him. ’ ” (NYLJ, Oct. 22, 1986, p 15, col 6.)
The key words in that document, "a person who was a resident of the dwelling unit and considered a member of the family” and similar language employed in subsequent letter rulings issued by the Administration, lend support to a finding that one need not necessarily be a blood relative so long as that individual shared so close a relationship with the tenant/ cooperator so that he or she might reasonably be considered to be a "member of the family”. In that context, it would be violative of the intent and underlying principle as expressed in the regulations to decline recognition of the respondent herein as a member of the family of the decedent who had in fact resided with him and certainly considered by him to be a member of his family.
In the present day society in which we live, many mature and even aged persons have, for economic reasons and companionship, taken up residence together. While such relationships between male and female partners may not and should not result in deeming them to be "spouses”, I am persuaded to hold that for the purposes of determining the right of a survivor of such a relationship, after the death of her "partner”, to continue to occupy the dwelling unit which they jointly set up as their home, that she be deemed to be a member of his immediate family.
Justice Asch, writing for the court in the case of Matter of Adult Anonymous II (88 AD2d 30), in approving the adoption of an adult male by another male, stated most eloquently at page 35: "The 'nuclear family’ arrangement is no longer the only model of family life in America. The realities of present day urban life allow many different types of nontraditional families * * * In any event, the best description of a family is a continuing relationship of love and care, and an assumption of responsibility for some other person”.
Put to that test, there certainly is sufficient proof of the *977 relationship between the respondent and the decedent over the period of at least the 10 years they resided together that qualifies Mrs. Bilotti as "family”.
In Two Assoc. v Brown (131 Misc 2d 986), the defendant was the surviving "gay life partner” of the named tenant of a rent-stabilized apartment. On the basis of the close relationship between them, the court declared him to be a family member at least equal to the right of a blood relative to obtain a vacancy lease. At page 990, the court stated "to deprive the instant defendant, who has provided care and love through both a serious illness and death, of family member status would indeed be an arbitrary way to define family.” (See, 420 E. 80th Co. v Chin, 115 Misc 2d 195, affd 97 AD2d 390.)
In the case of Carlyle Towers Coop. "B" v Pescador (NYLJ, Feb. 26, 1986, p 14, col 5), plaintiff approved defendant’s application which stated that his immediate family consisted of himself and his fiancée and an occupancy agreement was executed accordingly. Although the plaintiff succeeded in having the court declare that a person not the fiancée of the tenant shareholder, may not occupy the apartment, it would appear that implicit in that finding was the recognition of the fiancée as a member of the family of the defendant.
There were two recent Housing Court decisions, although not dealing with a co-op apartment, that did involve the issue of "family member”. In Park Assoc. v Mesard (NYLJ, Oct. 22, 1986, p 14, col 3), the court found that respondent Mesard was an immediate family member as defined by the New York State DHCR Emergency Operational Bulletin based upon her moving in with the tenant and living with him as husband and wife for 12 years until his death, although their relationship was never formalized by marriage.
In Gelman v Castaneda (NYLJ, Oct. 22, 1986, p 13, col 1), the court ruled that a homosexual who occupied a rent-controlled apartment for 19 years with his lover may not be evicted following the death of his friend, who was the tenant of record.
Under all of the circumstances of this case and in view of what I perceive to be an enlightened and realistic approach to modern day living, I find that the respondent is in fact a member of the family of the decedent, Howard Primm, so as to entitle her to a transfer of the shares of stock of the cooperative and the occupancy agreement.
In light of the foregoing decision, it is not necessary to *978 discuss in detail some of the other issues involved in this proceeding. However, some brief comment may be of some value.
Respondent’s defense raised the question as to the necessity of petitioner to obtain a certificate of eviction from the Commissioner of DHCR prior to the commencement of this proceeding, as required by the regulations of the Private Housing Finance Law and 9 NYCRR 1727-5.3. Relying on several decisions of this court to the effect that since the respondent was neither a tenant nor cooperator, such certificate was not required, petitioner contended that it could proceed herein. I view this to be a very narrow interpretation of the term "tenant” especially in instances where the respondent in possession has a color of right to the apartment to begin with. When administrative procedures are set up, it is desirable that such agency be resorted to before court proceedings are commenced.
Counsel for respondent alleged as a defense that the estate of the decedent was a necessary party to this proceeding. That question was posed in the case of Rosefan Constr. Corp. v Salazar (114 Misc 2d 956), and the court held that the estate is a necessary party in any proceeding in which a landlord seeks legal possession.
The defense of waiver based upon the acceptance of checks from the respondent is without merit for it has long been the law in New York that acceptance of rent must be with knowledge and intent to recognize the payor as the tenant. Such knowledge and intent was totally lacking in this case since petitioner was never aware of the fact that respondent was not Mrs. Primm.
Petitioner’s counsel has stressed the fact that the income affidavits executed by Mr. Primm for each of the years of his occupancy listed only himself as sole occupant. This could have been a most serious breach were it not for the fact that Mrs. Bilotti was not employed and had no income to be included in such affidavit. Under such circumstances, no fraud has been practiced on the petitioner or the governmental agency providing the subsidy financing. The omission of her name as an occupant is likewise inconsequential inasmuch as her residence in the apartment was open and notorious.
The petition is accordingly dismissed and judgment of possession is awarded to the respondent, Floree Bilotti.