OPINION OF THE COURT
Roger B. Hunting, J.
These three motions and cross motions for summary judgment or dismissal in each case are consolidated for disposition, since they present the identical legal issue for the court’s consideration:
*385 Are individuals of the same sex in long-standing, quasi-marital relationships roommates or immediate family members for the purposes of a rent-stabilized lease renewal? On the facts presented, this court finds each respondent to be the equivalent of a surviving spouse, who outlived their marriage partner. The respondents are, therefore, deemed de facto immediate family members. For the reasons set forth below the petitions in each proceeding are dismissed.
FACTS AND THEORIES OF THE PARTIES
After the death of the named lessee, the petitioner landlord in each case at bar instituted a holdover squatter proceeding to oust the respondent from his apartment. The petitioners’ counsel are primarily relying on Real Property Law § 235-f, popularly known as the "roommate law”, to evict the respondents. This statute prohibits an occupant of an apartment, whose name does not appear on the lease, from acquiring any rights to the unit when the named lessee vacates. It is conceded that none of the respondents are cotenants or otherwise listed on the lease agreements for the subject premises. Therefore, petitioner Yorkshire Towers moved for summary judgment against respondent Harpster and petitioners Thompson Realty and Bren-El Realty seek the same relief by cross motion against respondents Baker and Coleman, respectively.
The respondents rely on a recent decision of the State Supreme Court to oppose these summary judgment applications and to support the dismissal of the instant petitions and, by inference, the award of renewal leases in their own names. In Two Assoc, v Brown (131 Mise 2d 986 [Sup Ct, NY County 1986]), the court interpreted the Division of Housing and Community Renewal’s (DHCR) Emergency Operational Bulletin 85-1 as applicable to gay life partnerships, thus superseding Real Property Law § 235-f. Each respondent herein submitted an affidavit describing his relationship with the deceased tenant of record. The factual representations of the respondents were not challenged. Moreover, the petitioners did not offer affidavits by anyone with personal knowledge or any other evidence to depict the living arrangements of the respondents as other than a gay life partnership.
BILLY HARPSTER’S AFFIDAVIT
Respondent Harpster’s affidavit, dated October 17, 1986, states in paragraph 2, "Since the year 1966 until his demise *386 on September 18, 1984, I occupied said apartment with my friend, Dr. Armando de Cardenas, who was my gay life partner during this entire period.” The affidavit of Dr. Octavio Aguilar, dated October 17, 1986, details that he has known both the respondent and the late Dr. de Cardenas in excess of 25 years. In paragraph 3, he states, "Although it may be unconventional under present morals and circumstances, (they) always treated each other with the greatest loving and affectionate relationship that may exist between two human beings.” A letter, dated August 27, 1985, addressed to Helmsley-Spear, Inc. from respondent’s counsel indicates letters testamentary were issued to the respondent as the executor of Dr. de Cardenas’ estate. This letter is annexed as exhibit 2 to respondent’s affidavit, dated October 17, 1986.
PACO COLEMAN’S AFFIDAVIT
Respondent Coleman and the late Dennis Regenauer began living together in 1979. The respondent states in his affidavit, dated September 22, 1986, "As soon as we met we began to date and spend a great deal of time together. We quickly developed a relationship of mutual trust, love and dependence.” After living together for six years, in April 1985, Mr. Regenauer was diagnosed with Acquired Immune Deficiency Syndrome (AIDS) and died at home in February 1986. The respondent’s affidavit explains, "During the course of Dennis’ illness, I cared for him and attempted to make his life as comfortable as possible * * * I am unable to adequately convey the profound loss Dennis’ death has had upon me. I have experienced this loss in the same way any widowed spouse would.” Respondent’s counsel annexed to his affirmation various exhibits, including exhibit B, containing a letter from The Bank of New York’s mutual fund department, dated June 9, 1982, addressed to Scott Paco Coleman and Dennis Regenauer, as joint tenants, regarding a Dreyfus Liquid Assets account.
BRAD BAKER’S AFFIDAVIT
Respondent Baker moved into his apartment to live with his life partner, Carlos "Rene” Santos, in September 1982. In his affidavit, dated August 24, 1986, the respondent states, "It was our decision that I move in with Rene so that we could share our lives together * * * Rene and I resided in the apartment as a couple. Our friends and families were aware of our *387 lifetime commitment to each other * * * like any married couple, we shared household responsibilities, including all domestic chores.” Mr. Santos died on May 1, 1986 of pneumocystic pneumonia, an opportunistic infection associated with AIDS. Annexed to the respondent’s affidavit as exhibit D is the schedule of purchase prices and share allocations for apartments in respondent’s building that is currently the subject of a proposed cooperative plan pending with the New York Department of Law. Respondent Baker states in paragraph 18 of his affidavit, "It is no secret that vacant apartments are more valuable than occupied apartments to the sponsor of such an offering. I believe this to be the motivation behind the instant proceeding. My tenancy in the subject apartment has never been a secret. The superintendent Freda Nass has known me since I moved in, as has her husband Frank Nass.”
ANALYSIS
The facts of the three cases at bar all parallel the circumstances of the respondent in Two Assoc, v Brown (supra). Acting Supreme Court Justice Helen E. Freedman’s scholarly opinion concluded on equal protection grounds that respondent Brown, a surviving gay life partner, should be treated as a nonimmediate family member for purposes of receiving a vacancy lease to his apartment under DHCR’s Emergency Bulletin. Since the decision in Two Assoc, was rendered, more recent cases have held that the survivor of a family-like relationship between unmarried, cohabiting heterosexuals is entitled to immediate family status and a renewal lease under the DHCR bulletin. In light of Administrative Code of the City of New York § 8-108.1 et seq. (1986 recodification) (the gay rights law) the reasoning and holdings of these latest cases must be applied to relationships equal in kind between individuals of the same sex. This court adopts the term de facto immediate family member as descriptive of such a union between human beings, regardless of sex, unrelated by blood or marriage.
Petitioner’s argument that the roommate law (Real Property Law § 235-f) should govern the outcome of the cases before the court must fail in view of the growing trend to give weight to the emotional bond and other indicia of commitment between two individuals that distinguishes a quasi-marital relationship from a mere roommate relationship.
*388 In Park Assoc. v Mesard (NYLJ, Oct. 22, 1986, p 14, col 3) the respondent, Ruth Mesard, was deemed the equivalent of a surviving spouse, and not a mere occupant of a rent-stabilized apartment, upon the death of the prime tenant Hyman Miller. Because she had "lived with him as husband and wife for twelve years until his death in November of 1984, although their relationship was never formalized by marriage”, the court found a "relationship with the deceased such as to constitute a 'family’ ”. On this basis, the court declared Ms. Mesard an immediate family member entitled to a renewal lease in her own name.
In Concourse Vil. v Bilotti (133 Misc 2d 973), the bylaws of a Mitchell-Lama cooperative building restricted the transfer of ownership rights to immediate family members. Upon the death of the tenant/cooperator Howard Primm, the court interpreted the bylaws to include Floree Bilotti, the "live-in mate” of the deceased shareholder to whom she was never married. The court wrote, "Throughout the 10 years of such occupancy, they held themselves out to management, its employees and neighbors as husband and wife” "[u]nder all of the circumstances of this case and in view of what I perceive to be an enlightened and realistic approach to modern day living, I find that respondent is in fact a member of the family of the decedent”. (133 Misc 2d, at pp 974-975, 977.)
Based on Two Assoc. v Brown (supra), which recognized gay life partnerships between either lesbians or gay men to be covered by the DHCR Emergency Bulletin, this court finds the respondents herein to be similarly situated to the respondents in Park Assoc. v Mesard (supra) and Concourse Vil. v Bilotti (supra). In those two cases the courts declared that although the surviving occupants, Ruth Mesard and Floree Bilotti, were not married or otherwise related to the deceased tenants of record, they were to be considered immediate family members and not subject to eviction.
In the cases at bar the facts are precisely the same, except that the household relationships are between members of the same sex. This court cannot countenance a differentiation between heterosexuals in quasi-marital relationships and homosexuals similarly situated since it is the stated public policy of the City of New York to prohibit discrimination in housing based on sexual preference. (See, Administrative Code § 8-108.1.) This city ordinance now mandates that if a finding of immediate family status can be made without regard to the formalities of marriage, it must also be made without regard *389 to sexual orientation. For this reason, all of the respondents are hereby deemed de facto immediate family members of their respective decedents and entitled to renewal leases in their own names.
Accordingly, the cross motion of respondent Billy C. Harpster and the motions of respondents Brad Baker and Paco Coleman are granted. Petitioners raise with regard to the latter movants that they failed to attach a copy of their answer to their respective motion papers. The court finds this to be a mere irregularity, which was cured by virtue of the fact that the court file, provided by the clerk, contained the written answers filed with the court. Therefore, the petitions are dismissed and petitioners are directed to offer renewal leases to the respective respondents forthwith.