OPINION OF THE COURT
Per Curiam.
Order entered July 8, 1987 is reversed, with $10 costs; *829 tenant’s motion for summary judgment is denied and summary judgment is awarded in favor of the landlord.
The statutory tenant of record, Expedito Cruz, had resided in the rent-controlled apartment at issue since 1966. Following the death of Expedito Cruz, landlord brought this holdover summary proceeding to recover possession of the apartment from Lawrence O’Keeffe on the ground that O’Keeffe — who had resided with Cruz since 1976 — was a licensee whose license had terminated by virtue of the death of Cruz. O’Keeffe moved for summary judgment dismissing the holdover proceeding, arguing that he and Cruz were gay life partners and that he, O’Keeffe, is protected from eviction by New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d) which forbids the eviction of "either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant.” The Civil Court granted O’Keeffe’s motion for summary judgment, stating that:
"There exists a growing body of case law which confers upon gay life partners the same housing rights accorded to surviving family members. See Yorkshire Towers Co. v Harpster, 134 Misc.2d 384 (Civ. Ct., N.Y. Co., 1986); Braschi v Stahl Associates Co. [New York County Clerk’s] Index No. 2194/87 (Sup. Ct., N.Y. Co., 1987) [not officially reported, revd 143 AD2d 144] Two Associates v Brown * * * [131 Misc 2d 986] (Sup. Ct., N.Y. Co., 1986, reversed on other grounds * * * [127 AD2d 173] AD, 1st Dept.); Gelman v Casteneda, Index No. 38008/86 (Civ. Ct., N.Y. Co., 1986); Aiello and Ritter v Hoffer, N.Y.L.J., 6/22/ 87, p. 15, col. 1 (Civ. Ct., N.Y. Co.) [revd on other grounds NYLJ, Apr. 4, 1988, at 13, col 2 (App Term, 1st Dept)]. The equal protection clauses of New York State and the United States Constitution require equal treatment for similarly situated people, and the amendment to the Administrative Code of the City of New York section BI-7.2 bars discrimination based on sexual preferences in housing, employment and public accommodations.
"Under the present facts, the Rent Control laws in consonance with the Equal Protection clauses and the Administrative Code must be interpreted to protect respondent. The reasoning for this conclusion has been advanced in the cases cited above and therefore need not be repeated here.” (See also, Jane St. Co. v Yalis, index No. 83717/87, Civ Ct, NY County 1987; Midwest Estates v Mulaney, index No. 70540/86, *830 Civ Ct, NY County 1987; cf., Park Assocs. v Mesard, NYLJ, Oct. 22, 1986, at 14, col 3; Concourse Vil. v Bilotti, 133 Misc 2d 973, revd 139 Misc 2d 886 [App Term, 1st Dept].)
Braschi v Stahl Assocs. Co. (supra), which was among the spate of recent opinions from courts of original jurisdiction cited by the motion court as precedent for extending "succession rights” to O’Keeffe, was recently reversed by the Appellate Division, First Department (Braschi v Stahl Assocs. Co., 143 AD2d 44). In Braschi the court of original jurisdiction granted a motion by the plaintiff Miguel Braschi (who alleged he had been the gay life partner in residence with the deceased tenant of record before the latter’s death) for a preliminary injunction restraining the defendant landlord from taking further action to terminate Braschi’s occupancy. In reversing the motion court and denying Braschi’s application for a preliminary injunction the Appellate Division, First Department, stated: "While plaintiff has set forth sufficient proof to establish that he and the deceased lived as a couple for 10 years and had a long-term relationship marked by love and fidelity for each other, he did not sustain his burden of proving the likelihood of success on the merits of his argument that as the gay life partner of the deceased he is one of the classes of individuals designated by section 2204.6 (d) [of the New York City Rent and Eviction Regulations] as entitled to remain in an apartment after the death of the tenant-of-record” (at 44). The Appellate Division in Braschi further observed that the issue before it was "distinct from issues of right of association and protection from discrimination on the basis of sexual orientation or marital status” inasmuch as the issue "concerns the right of succession to the leasehold property rights of a rent-control tenant, a right which did not exist at common law and which, consequently, is governed purely by statute” (at 45).* The essence of the Appellate Division holding in Braschi is that New York City Rent and Eviction Regulations § 2204.6 only protects (i.e., affords succession rights, to) "surviving spouses and family members within traditional, legally recognized familial relationships” (Braschi v Stahl Assocs. Co., supra, at 45). The Appellate Division in Braschi (at 45, citing Matter of Robert Paul P., 63 NY2d 233, 238-239) noted that since homosexual partners cannot yet *831 legally marry or enter into legally recognized family relationships they derive no protection from New York City Rent and Eviction Regulations § 2204.6 (d) and that only the Legislature may " 'as a matter of State public policy’ * * * grant some form of legal status to a homosexual relationship [and] [t]he Legislature has not yet done so.”
Our previous holding in Lepow v Gress (NYLJ, July 2, 1984, at 14, col 1 [App Term, 1st Dept]) is also instructive. In Lepow, we rejected the claim of one Edward Gress that he was protected from eviction, under the rent control law, by virtue of having cohabited with the statutory tenant of record for 16 years prior to her death and having held himself out as the statutory tenant’s husband, albeit never marrying her. While New York City Rent and Eviction Regulations § 56 (d) (the predecessor to § 2204.6 [d]) forbade the eviction of "either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant”, we permitted the eviction of Gress to lie, relying on Young v Carruth (89 AD2d 466) and Morone v Morone (50 NY2d 481) for the proposition that marriage is a legal relationship with its own legal incidents and that persons who choose to live together and not marry do so without the benefit of the rules of law that govern property and financial matters between married couples.
In light of our holding in Lepow v Gress (supra) that unmarried "heterosexual life partners” are not entitled to the protection of 9 NYCRR 2204.6 (d), it is neither a denial of equal protection of the law nor discrimination based on sexual preference, violative of the Administrative Code of the City of New York, to deny section 2204.6 (d) protection to similarly situated "gay life partners” (see, Two Assocs. v Brown, 127 AD2d 173, 184-185). The implicit, derivative argument that gay life partners are not "similarly situated” to heterosexual partners, because the former, unlike the latter, are denied the right to enter into marriage, is to no avail. It is not argued by O’Keeffe that same sex couples have a constitutional entitlement to a union giving rise to rights and legal obligations comparable to those derived from marriage. Rather, O’Keeffe argues that in the context of New York City Rent and Eviction Regulations § 2204.6 (d) there is no rational basis for the different treatment accorded married and unmarried persons (citing People v Onofre, 51 NY2d 476; cf., Note, The Constitutional Status of Sexual Orientation: Homosexuality as a Suspect Class, 98 Harv L Rev 1285). But as was pointed out by the *832 Appellate Division in Braschi (supra), at common law no right existed in persons in residence with a tenant of record to succeed to that tenancy upon the death or departure of the tenant of record, and the extension of such rights through legislation and implementing administrative regulation to surviving spouses and/or family members of the tenant of record but not to unrelated individuals otherwise similarly situated is not per se a deprivation of constitutional right to such unrelated individuals (cf., Eisenstadt v Baird, 405 US 438). O’Keeffe argues that as the surviving gay life partner of the statutory tenant he should be deemed either the "functional equivalent” of a surviving spouse or at least a de facto family member protected by New York City Rent and Eviction Regulations § 2204.6 (d) (cf., Yorkshire Towers Co. v Harpster, 134 Misc 2d, supra, at 387; Athineos v Thayer, NYLJ, Feb. 9, 1988, at 15, col 4 [App Term, 2d Dept]). We reject that argument; rights and entitlements inherent in marital and familial relationships do not inure to the benefit of those not so related (cf., Lepow v Gress, supra).
We of course realize that the permutations of human relationships are many and that one in residence with a statutory tenant, whatever the nature of his or her personal relationship with the statutory tenant, faces significant hardship if forced to relocate in a housing market in which rent-controlled accommodations simply cannot be duplicated. But rent control is an emergency scheme significantly impairing the free market dynamic in favor of the statutory tenant (Sullivan v Brevard Assocs., 66 NY2d 489) and the court may not, sua sponte, and in derogation of landlord’s rights, formulate new succession rights to protect persons who have not been protected by New York City Rent and Eviction Regulations § 2204.6 (d). The hardship necessarily occasioned by the displacement of such persons in residence with a statutory tenant upon the death of that tenant is a problem best addressed by the Legislature (see, East Four-Forty Assocs. v Ewell, 138 Misc 2d 235 [App Term, 1st Dept, Parness, J., dissenting]).
Moreover, we find it beyond the practical scope of the judiciary to assess the character of the numerous and varied relationships which have come to accompany the occupancy of a rent-controlled apartment and assign to them relative legal rights (see, L.V. Realty v Desommosy, 119 Misc 2d 213, 216). We do note, however, that the exact scope of familial relationships falling within the ambit of New York City Rent and *833 Eviction Regulations § 2204.6 (d) is far from clear (i.e., are cousins, stepchildren, in-laws, etc., to be included?), and certainly, beyond the immediate family, and indeed even at times including the immediate family, personal relationships are ofttimes far "closer” than familial relationships. Further, we note that a sexual dimension to a relationship between an occupant and a statutory tenant — whatever the character of that sexual relationship-does not in and of itself necessarily render the occupant more deserving of succession rights than another occupant possessing a long-standing fraternal, economic or other relationship, albeit not a sexual relationship, with a statutory tenant. In any event, the hardship of relocation faced by one who has long resided with a statutory tenant is principally a consequence of the difficulty and expense of finding new quarters rather than of the nature of the particular relationship that existed between the occupant and the statutory tenant.
After the Court of Appeals in Hudson View Props. v Weiss (59 NY2d 733) sustained the enforceability of a clause in the standard form lease limiting occupancy of premises to the tenant of record and to members of tenant of record’s immediate family, the Legislature on at least one level addressed the problem of occupancy rights by fashioning the "roommate law” (Real Property Law § 235-f) and we specifically note that Real Property Law § 235-f, by its own terms (subd [6]), states that no occupant, without express written permission of the landlord, acquires any right to continued occupancy in the event that tenant vacates the premises. Thus the Legislature, at least at this juncture, has — far from exhibiting any inclination to extend succession rights to occupants in residence with, but unrelated to a statutory tenant — precluded such rights by virtue of the express proscription thereof in Real Property Law § 235-f (6).
Although New York City Rent and Eviction Regulations § 2204.6 (d) (formerly § 56 [d]) has secured the imprimatur of the Court of Appeals (Matter of Herzog v Joy, 74 AD2d 372, affd 53 NY2d 821), the section remains the formulation of the early administrators of rent control; it is devoid of "legislative history” (see, East Four-Forty Assocs. v Ewell, supra), and it contains no language which would suggest that its formulators intended it to benefit anyone other than the spouse and family members, as traditionally defined, of the statutory tenant. The New York State Department of Housing and Urban Renewal (DHCR) in recently promulgating a new Rent Stabilization *834 Code formulated a succession provision (9 NYCRR 2523.5 [b] [2]) purporting to extend succession rights to "family members” defined as: "[a] husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant or permanent tenant” (9 NYCRR 2520.6 [o]). Although in East Four-Forty Assocs. v Ewell (supra) this court held the succession provision of the new Rent Stabilization Code to be invalid because it conflicted with the Rent Stabilization Law of 1969 (Administrative Code of City of New York § 26-501 et seq.), it is instructive that the DHCR, while purporting to afford succession rights to an expansive array of "family members”, conspicuously afforded no such rights to "gay life partners” or "de facto” family members. In this context it would be especially inappropriate to construe the generic reference to "family members” in New York City Rent and Eviction Regulations § 2204.6 (d) as intended to encompass anyone other than the spouse and the family members, as traditionally defined, of statutory tenants.
Finally we note that the record before us is devoid of evidence that the landlord has refused to permit O’Keeffe to accede to Cruz’ tenancy because of O’Keeffe’s avowal that he had been Cruz’ gay life partner. Indeed, since to recognize a claim of succession rights would necessarily perpetuate the rent-controlled status of a premises, it is hard to conceive of any landlord recognizing such rights in any person — irrespective of their sexual orientation — other than those specifically protected by New York City Rent and Eviction Regulations § 2204.6 (d).
Sandifer, J. P., and Miller, J., concur; Ostrau, J., concurs in a separate memorandum opinion.

 See, New York City Rent and Rehabilitation Law (Administrative Code of City of New York) § 26-403 (m) and New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d).