■ In the Matter of CLASON MANAGEMENT CORP., Respondent, v. ROBERT E. HERMAN, as State Rent Administrator, Appellant, and HARDING PARK ASSOCIATION, Intervenor-Appellant.

BOTEIN, P. J. (dissenting). Petitioner is the owner of a tract of land in the Clason Point section of The Bronx. It rents parcels of that part of the tract with which this litigation is concerned to some 90 tenants, on a monthly tenancy basis, at rentals of about $20 a month or less. Located on these parcels are bungalow-type dwellings, for the most part containing four rooms, erected by the tenants or their predecessors prior to 1941, and occupied by the tenants since 1952 and in many instances for much longer periods. The tenants are the owners of the bungalows, which may be removed by them and can in fact be removed without material damage.

Late in 1960 petitioner gave notice to the tenants of a proposed increase in rentals to $25 a month. Proceedings before the State Rent Administrator upon complaint of the tenants ensued, and resulted in a determination that petitioner's rentals are subject to control of the Temporary State Housing Rent Commission. Upon review, Special Term annulled the determination on the ground that the "real estate, by itself", does not fall within the definition of "housing accommodation" set forth in the Emergency Housing Rent Control Law (§ 2, subd. 2; L. 1946, ch. 274, as amd.). This appeal is by the Administrator from the order of annulment.

The Administrator's determination appears to have been partially influenced by the fact that all of these units had been registered in 1943 with the Federal rent control authorities as properties subject to rent control; and it is not questioned that on its face the definition of "housing accommodations" in the Federal statute included petitioner's land, for that definition reads as follows: "The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property." (U. S. Code, tit. 50, Appendix, § 1892, subd. [b].)

I agree with Special Term that the scope of the Federal definition does not aid the Administrator. While, in a general sense, it is true to say that the intention of our rent control law was to continue the coverage of the antecedent Federal statute, the actual statutory expression of that intention (§ 14, subd. 1) refers to "housing accommodations, *as that term is defined herein*" (emphasis supplied). Accordingly, the definition in the State statute must govern. It is on the interpretation of that definition that I cannot agree with Special Term and the majority of the court. The definition, in pertinent part, is as follows (§ 2, subd. 2): "'Housing accommodation.' Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place, boarding house, lodging house or hotel, together with the land and buildings appurtenant thereto, and all services, privileges, furnishings, furniture and facilities supplied in connection with the occupation thereof".

We are not scrutinizing conveyancer's draftsmanship. If, as seems plain, the phrase "together with the land and buildings appurtenant thereto" can be reasonably construed to embrace the land beneath a bungalow (or as petitioner itself said of the definition at Special Term, "it does also imply that the land

must be taken together with the building"), it must follow that the bungalow, being a structure occupied by one or more individuals as a residence, is, conjointly with the underlying land, a housing accommodation. Under the wording of the statute, the fact that title to the structure and title to the land are in different hands is clearly not a circumstance which excludes the land from the definition of housing accommodation. Nor is the definition couched in terms of what is being "rented or offered for rent" as was the Federal statute; the emphasis is on occupancy.

The foregoing construction, while confined to the text of the definition, finds support in the specific exclusion from that definition of "trailer space used exclusively for transient occupancy" (§ 2, subd. 2, par. [c]). The obvious intent, in part, was to continue to subject to control trailer space used for permanent occupancy. As trailer space is land, the Legislature must have been persuaded that the land on which a trailer rests permanently is within the reach of the definition; otherwise, would it have taken the pains to exclude from the definition a particular that was never within it? That consideratoin aside, it is odd that the Legislature should wish to protect the owner of a movable trailer using another's land for permanent occupancy; and not to protect the owner of a movable bungalow using another's land for similar occupancy.

Special Term (p. 259) was of the view that the Federal definition was broader than the State's, that it included unimproved real estate, and that the asserted intention of the Legislature to include "the rental of land alone * * * is negatived by the fact that the broader definition of the accommodations to be controlled, which was contained in the Federal act, was modified by eliminating the reference to unimproved real estate". It does not follow that the recasting of the Federal definition narrowed its scope in the aspect now before us; that hinges on whether the definition as recast by the State can or cannot reasonably be given the meaning here advanced.

To be sure, under the Federal definition the rent charged or to be charged for vacant land was subject to control, and under the State's definition it is not; vacant land was omitted. But this case is not concerned with vacant land; not even with extensive premises of which only a minor portion is improved. It is concerned with occupied, fully utilized land — small, family plots approximately 25 feet by 100 feet, each with a residence on it to which the plot is indisputably "appurtenant". An inference drawn from the omission of reference to vacant land should be coextensive with the omission.

No reason to expand the omission suggests itself. The Federal definition, with a variation not here material, was originally contained in the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 942, subd. [f]). The administrative regulation under that act, despite the breadth of the definition, was officially interpreted to exclude leased vacant land *until* the lessee constructed a house, at which time the land became controlled even though the lease provided for the lessee's retention of title to the house (Interpretation I(a)-III, Oct. 2, 1942, OPA Service 200:854; see *Madison Park Corp.* v. *Bowles,* 140 F. 2d 316, 330), which would seem to explain why and to what extent the definition in our rent control law was narrowed. And, surely, the interpretation here advocated furthers the purposes of the rent control law; as Special Term said, with apparent overtones of regret, "there appears to be no good reason for not including ground leases or rents within the rent control laws" (p. 260). Were land and bungalow in the same ownership, petitioner concedes that the tenants would be protected against "unceremonious ouster". How division of the ownership will make the ouster ceremonious is not explained.

The ultimate interpretation of the statutory definition is for the court, not for the Administrator; but his knowledge of housing conditions is of course

more intimate and authentic. His statement that "Housing units of this sort were known to constitute the sole and permanent dwelling of a considerable number of persons" is uncontradicted, as is his statement that "this problem is not confined to this particular development herein in The Bronx, but also exists in various other parts of the city such as Rockaway, Coney Island and Staten Island and also in Westchester. A very substantial number of tenants are affected." In my opinion the statute, taken literally, protects such tenants from the "uncertainty, hardship and dislocation" which the Legislature sought to prevent (§ 1). And even if a literal reading does not irresistibly dictate inclusion of the land in the definition, certainly the definition can without strain accommodate a construction so evidently consonant with the dominant purpose of the emergency rent laws. Surely if "The letter of a statute is not to be followed when it leads away from the legislative intent" (*Security Discount Associates* v. *Lynmar Homes,* 13 A D 2d 389, 394; see *Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677, 685), it should be followed when it leads to that intent.

I would reverse the order of Special Term and reinstate that of the Administrator.

Breitel, Rabin, Stevens and Eager, JJ., concur in decision; Botein, P. J., dissents in opinion.

Order entered on June 20, 1961 affirmed on opinion of Special Term (29 Misc 2d 258), without costs.