Two Associates, Appellant-Respondent, v Michael Brown, Respondent-Appellant, and New York State Division of Housing and Community Renewal, Respondent.

First Department, April 9, 1987

### APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Clifford A. Entes* with him on the brief; *Finkelstein, Borah, Schwartz, Altschuler & Goldstein,* attorneys), for appellant-respondent.

*Russell G. Pearce* of counsel *(Douglass J. Seidman,* attorney), for respondent-appellant.

*Cullen S. McVoy* of counsel *(Dennis B. Hasher,* attorney), for respondent.

*Paula L. Ettelbrick* of counsel *(Evan Wolfson* and *Carey Wagner* with her on the brief, attorneys), for Lambda Legal Defense and Education Fund, Inc., *amicus curiae.*

*Carol L. Ziegler* of counsel *(Mitchell Karp* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for New York City Commission on Human Rights, *amicus curiae.*

*Nan D. Hunter* for American Civil Liberties Union and others, *amici curiae.*

### OPINION OF THE COURT

Per Curiam.

Plaintiff landlord seeks possession of the rent-stabilized apartment in which the defendant Michael Brown resides, on the ground that he is not the tenant of record, and that the lease of the tenant of record, Robert Hayes, who is deceased, has expired. Brown, who had lived in the apartment together

with Hayes, claims that he is entitled to continued occupancy of the apartment with the right to a new lease in his name, by virtue of his status as a surviving "gay life partner". It has been made clear by the Court of Appeals in *Sullivan v Brevard Assocs.* (66 NY2d 489), that rights to a rent-stabilized apartment are governed solely by statute, and since the Rent Stabilization Law makes no provision for a continued right of occupancy under the circumstances asserted here, we conclude that summary judgment to the landlord is mandated.

The apartment in question was originally leased, in September 1974, to Robert Hayes and Stephen Restko. The lease was renewed in Hayes' name alone on September 1, 1978. The most recent renewal of the lease was again executed by Hayes alone, effective April 1, 1982 for a three-year term ending March 31, 1985.

Defendant Brown claims that he and Hayes lived together in the apartment from 1977 onward. He indicates that they met in 1975, that they began to "date" and fell in love, and that, in March 1977, Hayes invited Brown to move into his apartment to share their lives together. Brown claims that since that time he has lived openly in the apartment, almost continuously (except for two short absences), and has maintained no other primary residence. While Hayes was alive, the two of them shared finances, including payments for rent and utilities, divided the responsibilities for domestic chores, and held themselves out to family and friends as "life partners". At various times relatives of Brown and Hayes also resided with the couple in the apartment. In 1983, Hayes became seriously ill with a disease that was eventually diagnosed as Acquired Immune Deficiency Syndrome (AIDS), and after two periods of hospitalization, died in January 1985.

Plaintiff Two Associates took title to the building on June 15, 1982 and according to its principal, Bruce Kafenbaum, the sole tenant of record for the apartment at that time was Robert Hayes, and Hayes was the only party with whom Two Associates dealt as the tenant of the apartment. Kafenbaum claims that he first met Brown in January 1985 when he visited the apartment to inquire about the rent, and that at that time Brown informed him of Hayes' death. (Kafenbaum asserts that he had visited the apartment at least five times previously and never met Brown, and that when Two Associates replaced the buzzer and mailboxes, and typed a new directory, the only name listed for the apartment was Robert Hayes. Brown, on the other hand, claims that his name had

been on the buzzer and mailbox since September 1977 and that the superintendent always knew that he was residing in the apartment.)

Brown wrote a letter to Kafenbaum on February 15, 1985 formally notifying him of Hayes' death and requesting a new lease in Brown's name only. Brown offered to pay any increase in rent. He stated that "as you know from conversations with Robert, it was his intention to add my name to the lease. His deteriorating illness prevented him from doing so."

Two Associates responded with a letter from its attorneys, dated March 26, 1985, in which they informed Brown that it was the landlord's position that upon Hayes' death any rights Brown might have to occupy the apartment expired. The letter also noted that Hayes' lease would expire on March 31, 1985 and advised Brown that he was to vacate and surrender the apartment within 10 days.

Upon Brown's failure to vacate the apartment within the time specified, plaintiff landlord commenced the instant action, in April 1985, for a declaratory judgment that Brown's right to occupy the subject apartment expired upon the death of Hayes and for a judgment ejecting Brown. Brown answered asserting, *inter alia,* affirmative defenses and a counterclaim of retaliatory eviction based on his complaints to government agencies for the landlord's failure to comply with health, sanitation, and housing maintenance standards, and breaches of the warranty of habitability. Plaintiff's reply denied the allegations and alleged that the counterclaim failed to state a cause of action.

When plaintiff thereafter moved for summary judgment, defendant Brown similarly cross-moved for summary judgment, asserting, for the first time, that he was entitled to a renewal or vacancy lease by virtue of his status as a surviving "spouse", or "gay life partner", under the Rent Stabilization Law, the Human Rights Law and the Equal Protection Clauses of the State and Federal Constitutions, and under principles of equity, and he sought leave to serve an amended answer asserting such claims as well as the additional claim that plaintiff was discriminating against him on the basis of disability, to wit, that the landlord believed that Brown suffered from AIDS.

Summary judgment was granted to plaintiff landlord and defendant's cross motion was denied, in a decision dated December 13, 1985, wherein the court noted that it was

"extremely sympathetic to defendant's plight", but that it was constrained to grant the landlord's motion by virtue of the Court of Appeals decision in *Sullivan v Brevard Assocs.* (66 NY2d 489 [decided Nov. 19, 1985], *supra).* In *Sullivan,* the Court of Appeals, in an opinion by Judge Kaye, held that the sister of the rent-stabilized tenant of record, who had lived with the tenant, was not entitled to a renewal lease after the tenant vacated the premises, concluding that the right to such lease was not predicated upon the nature of the relationship between family members but on the express terms of the Rent Stabilization Law which provides that a renewal lease need be offered only to a "tenant". Accordingly, the motion court held that even if it were to agree that defendant should be deemed a surviving spouse (an issue which the court did not reach), such finding would be irrelevant in light of the *Sullivan* holding that only the tenant of record need be offered a renewal lease under the Rent Stabilization Law. The court also found the "Roommate Law", Real Property Law § 235-f, supportive of plaintiff landlord's position, in that the permission accorded therein to parties not named on the lease to occupy an apartment together with the named tenant, is expressly subject to the proviso that no such occupant shall acquire any right to continued occupancy in the event the tenant vacates the premises. (Real Property Law § 235-f [6].) Defendant's claims of retaliatory eviction and breach of the warranty of habitability were dismissed on the ground that as a nontenant defendant lacked standing to raise those claims. Finally, the court found no evidence to support either defendant's claim of waiver nor his claim that the landlord was discriminating against him because he was believed to have AIDS.

Meanwhile, on December 10, 1985, the New York State Division of Housing and Community Renewal (DHCR) issued an Emergency Operational Bulletin (No. 85-1) addressing the problem of surviving family members of rent-stabilized tenants in response to the Court of Appeals decision in *Sullivan v Brevard Assocs. (supra).* This emergency bulletin requires a landlord to offer a renewal lease to a rent-stabilized tenant and his or her immediate family, defined as "husband, wife, son, daughter, stepson, stepdaughter, father, mother". The bulletin also set forth, for the first time, a requirement that a landlord of rent-stabilized premises must offer "the right to first refusal of a new lease", at the maximum legal rent allowed, to a "non-immediate family member" who has "con-

tinuously resided in the dwelling unit as a primary resident since the commencement of the tenancy, or the beginning of the relationship". "Non-immediate family member" is defined as "a brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, daughter-in-law". Finally, the bulletin provides that, at the landlord's option, a new lease may be offered at the maximum legal rent to an occupant of a rent-stabilized housing accommodation other than the tenant, immediate family, or nonimmediate family member in the event the "tenant" is no longer in occupancy.

Shortly thereafter defendant moved for renewal of his summary judgment motion asserting that since the emergency bulletin provides a legal basis for the entitlement of a surviving spouse to a rent-stabilized renewal lease, such protection cannot be denied a surviving "gay life partner" under the Equal Protection Clauses of the State and Federal Constitutions. In opposition, the plaintiff landlord argued that the emergency bulletin was invalid because the Commissioner of DHCR, as a member of the executive branch of government, was without authority to unilaterally issue what is essentially legislation. Plaintiff further contended that even assuming, arguendo, the bulletin's validity, there would be no basis for finding that defendant was denied equal protection of the law since the bulletin makes no provision for unmarried heterosexual couples, to whom the landlord equated Hayes and Brown.

Since the issue of the validity of the emergency bulletin was raised on the motion for renewal, the court ordered DHCR joined as party and it was directed to address that issue. This was done by way of an affidavit, by DHCR Deputy Commissioner Manuel Mirabal, in which he asserted that DHCR perceived that the *Sullivan* decision *(supra)* had the potential to be used as a basis for wholesale evictions of thousands of rent-stabilized tenants. He indicated that DHCR was in the process of preparing a new Code of the Rent Stabilization Association of New York City, Inc. (pursuant to L 1985, ch 888) that would contain a broader definition of the term "tenant", to include therein specified members of the named tenant's immediate family and thus protect them from eviction in the event of the named tenant's departure, but that the new Code would not become law for some time because of the requirements for submission to the Department of Housing Preservation and Development and public hearings. Simi-

larly, any separate legislation to protect tenants' family members would require time-consuming approval by the State Legislature. Thus, in view of the perceived urgency of the situation, the Commissioner of DHCR, William B. Eimicke, issued the Emergency Operational Bulletin to provide emergency, interim protection. Mirabal argued that the bulletin was validly promulgated, there being no formal requirements for the issuance of such a bulletin, and that the subject fell within the Commissioner of DHCR's statutory authority to administer the law in a way which protects tenants from wholesale and arbitrary eviction.

The court granted defendant Brown's motion for renewal and, upon renewal, recalled its prior decision and granted the cross motion to the extent of awarding defendant Brown a rent-stabilized vacancy lease and issuing a declaratory judgment that Emergency Operational Bulletin No. 85-1 of DHCR was validly promulgated (131 Misc 2d 986). The court accepted DHCR's argument that in light of the perceived emergency situation, and under the authority granted DHCR to promulgate a new Code of the Rent Stabilization Association of New York City, Inc. (Code), and its responsibility to administer current housing laws, the bulletin was a valid exercise of authority to provide a current interpretation of "tenant".

While the court declined to find that defendant Brown, as a "gay life partner", could be equated to a spouse, it did hold that Brown's relationship with Hayes was akin to that of a family member. In that regard, it was noted that since the bulletin deems "a host of relatives" *(supra,* at 990) to be family members, and gives them vacancy lease rights regardless of any economic relationship or dependency, as was present here, to fail to extend such rights to Brown would be unconstitutional, as violative of equal protection, there being no rational reason to exclude a person in Brown's situation from being classified as a family member when the relationship was in fact closer than that of most family members. The court also found *(supra,* at 990) that it would be inconsistent with the purpose of the bulletin, " 'to prevent wholesale eviction[s] * * * regardless of * * * circumstances' ", to exclude from its purview a person in defendant's position.

Plaintiff appeals from the order and judgment entered on the renewed motion and seeks reinstatement of the court's original decision granting it summary judgment ejecting defendant.

The critical threshold issue on the instant appeal is whether the operational bulletin issued by DHCR on December 10, 1985 was validly promulgated. We conclude that it was not.

It is important to recall at the outset the purposes that were intended to be served by the New York City Rent Stabilization Law, which was adopted in 1969 pursuant to appropriate legislative delegation, and the procedures by which those purposes were to be accomplished. (Administrative Code of the City of New York, ch 51, tit YY; Local Laws, 1969, No. 16 of City of New York.) These issues are extensively discussed in the opinion of Judge Bergan in the case of *8200 Realty Corp. v Lindsay* (27 NY2d 124), wherein the Court of Appeals unanimously upheld the validity of that law. It was noted that while the law undertook to cover "heretofore uncontrolled housing accommodations" (at 137) completed between February 1, 1947 and March 10, 1969, it was also concerned with permitting this to be done in a manner that would not discourage new housing construction which was "conceded on all sides" to be "the only ultimate solution to the housing shortage" (at 138). Toward that end, the law represented a "compromise solution" reflecting a conscious legislative choice to impose a "less onerous form of rent control" and provided for the law to be "administered in part by an association made up of apartment owners, but under close and detailed supervision and control of official city agencies". As the decision further notes (at 130), the association is "precisely prescribed (§ YY51-6.0) as a 'Real Estate Industry Stabilization Association' " and under the provisions of the law acceptance of such association required the satisfaction of certain preconditions, including the adoption of "a code covering related terms and conditions of occupancy which has been approved by the Housing and Development Administration".

The code which the Rent Stabilization Law of 1969 (Law) made a precondition for acceptance or registration of a Real Estate Industry Stabilization Association was expressly made subject to specific guidelines set forth in section YY51-6.0 (c) of the Law. Of particular relevance to the instant case is former paragraph (4) of subdivision (c) which states that a Code will not be approved unless it "includes provisions requiring members to grant a two or a three years lease at the option of the tenant and which also requires members to grant a one year renewal lease upon the request of a tenant at such fair rent levels provided for by the rent guidelines board". The Code subsequently adopted pursuant to the Law included such

provision for the right of renewal of a lease for up to a three-year lease at "the option of the tenant". *(See,* Code of the Real Estate Industry Stabilization Association of New York City, Inc. § 23.) Neither the Law, nor the Code, further defined the term "tenant" in this context of the right to a renewal lease.

The Rent Stabilization Law of 1969 vested over-all supervision of the regulatory process in the Housing and Development Administration which was expressly authorized to enact rules and regulations for the implementation of the statute (Administrative Code former § YY51-4.0 [c]).

The Omnibus Housing Act of 1983 transferred responsibility for administering the Rent Stabilization Law to the New York State Division of Housing and Community Renewal. Section YY51-4.0 of the Administrative Code which had empowered the Housing and Development Administration "to promulgate such rules and regulations as it may deem necessary for the effective implementation of this law" was repealed by the Act (L 1983, ch 403, § 7) without express replacement. Instead, provision was made for amendments to the Code by action of the Stabilization Association "subject to the approval of the department of housing preservation and development". (L 1983, ch 403, § 9.)

Another major amendment of the Rent Stabilization Law took place in 1985 when the Real Estate Stabilization Association was "divested of all its powers and authority under this law" (Administrative Code § YY51-6.0 [a]), including that of promulgating amendments to the Code. (L 1985, ch 888, §§ 1, 2.) The existing Code itself, however, was continued in effect. The amended statute (§ YY51-6.0 [b], eff Aug. 2, 1985 [L 1985, ch 888, § 11]) authorizes the Commissioner of DHCR to promulgate *amendments* to the Code, but also requires that such amendments shall not be adopted without first being submitted to the Commissioner of the Department of Housing Preservation and Development, to make comments and recommendations, after which time the Commissioner of DHCR must formally review these comments or recommendations, following which the Commissioner must hold a public hearing.

DHCR contends that its power to promulgate an emergency bulletin, such as is here at issue, derives from its "broad authority" to administer the Rent Stabilization Law (L 1983, ch 403, § 3) in a manner which best effectuates the purpose of the statute.

However, the Commissioner's authority to *administer* the

Rent Stabilization Law does not include the authority to create new laws. "Administrative agencies can only promulgate rules to further the implementation of the law *as it exists;* they have no authority to create a rule out of harmony with the statute". *(Matter of Jones v Berman,* 37 NY2d 42, 53; emphasis added; *see also, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588.) Particularly significant in that regard, moreover, is the fact that upon amendment of the Law, in 1983, the power which the prior supervisory agency had had to "promulgate rules and regulations as it may deem necessary" for the effective implementation of the law was expressly repealed and no concomitant authority was granted to DHCR by whom the law was to be administered (L 1983, ch 403, §§ 3, 7).

While the Rent Stabilization Law has always required that a landlord renew the lease of a "tenant" (Administrative Code § YY51-6.0 [c] [4]), neither the Law nor the Rent Stabilization Code have ever further defined or expanded the term "tenant" in this context. While certain administrative determinations of the Conciliation and Appeals Board, the predecessor to DHCR for purposes of adjudicating individual disputes under the Stabilization Law, dealt with family rights in the context of tenancy on a case-by-case basis, the issue has never directly been addressed by statute or regulation. Following various lower court decisions *(e.g., Melohn v Heins,* NYLJ, Apr. 14, 1981, at 6, col 1 [App Term, 1st Dept]), the Court of Appeals, in 1984, ruled that while a lease provision may permit family members to occupy a rent-stabilized apartment together with a tenant, such provision does not permit such family members to succeed to possession, nor does it require a landlord to offer them a renewal lease. *(Tagert v 211 E. 70th St. Co.,* 63 NY2d 818.)* Finally, on November 19, 1985, the Court of Appeals resolved any doubt as to the meaning of the word "tenant", in the context of a lease covering a rent-stabilized apartment, in its decision in *Sullivan v Brevard Assocs.* (66 NY2d 489, *supra)* when it held that, contrary to the New York City Rent and Rehabilitation Law, which contains more onerous regulations and which specifically provides for continued residence of surviving family members *(see, Matter of Herzog v Joy,* 74 AD2d 372, *affd* 53 NY2d 821) under the Rent Stabilization Law only the named tenant as defined in the lease is entitled to a renewal lease, and no such right extends to a family member who has resided in the apartment together with the named tenant. Thus, in light of the clear language of the Rent

Stabilization Law and the judicial construction of that language, it cannot be said that, in issuing the emergency bulletin the Commissioner was merely interpreting or administering the existing regulations. On the contrary, the bulletin's "rules" are designed to extend the protection of the Rent Stabilization Law to parties the Legislature never intended to protect. The effect of the bulletin is not to define the existing word "tenant" in the regulations governing lease renewals, a word that is unambiguous, but is rather to create a new law entitling a new broad class of people to a lease renewal. The Commissioner may not so act in the absence of a legislative amendment of the Law or without properly moving to amend the Code as specified in the Law.

The case of *Matter of Hernandez v Blum* (61 NY2d 506) is instructive in this regard. In *Hernandez,* the United States Department of Health and Human Services attempted to establish new eligibility requirements for Medicaid benefits by unilaterally issuing a bulletin, termed an "Action Transmittal", which purported to create eligibility requirements which materially differed from those set forth in the applicable statute and regulations. The Court of Appeals ruled that this bulletin was invalid. It held that the Action Transmittal, since it established new eligibility requirements, was more than a permissible "interpretation" or "clarification" of a regulation by an administrative agency. The court stated that "[w]hile the interpretation given a statute by an agency charged with enforcing its provisions is entitled to substantial deference, the agency may not change the eligibility requirements provided by the clear language of the statute and regulations without formal amendment" *(supra,* at 512).

Earlier cases interpreting the authority of the State Rent Administrator to enforce the rent laws are also consistent with this view. In *Matter of Jaffe v McGoldrick* (285 App Div 889), the court ruled that the State Rent Administrator could not disregard legislative enactments when making an administrative determination as to what constitutes a legal, livable room. The court noted that the Administrator "could not disregard the definitions made by the legislative bodies" under the guise of "interpreting" the regulations he was empowered to administer. The plain language of the legislative enactment is controlling, and the administrative agency may not make a unilateral ruling that is at variance with the legislative enactment. *(See also, Matter of Mayfair-York Corp. v Weaver,* 13 Misc 2d 829, *affd* 9 AD2d 613.)

Similarly, the Temporary State Housing Rent Commission was overruled in its attempt to expand the legislative classification of "housing accommodations" subject to its control to include ground leases in *Matter of Clason Mgt. Corp. v Temporary State Hous. Rent Commn.* (29 Misc 2d 258, *affd* 14 AD2d 765, *affd* 10 NY2d 1022). In that case, the court held that the administrative agency could not by unilateral action extend the classification beyond that which the Legislature stated. The agency sought to justify its action as a permissible exercise in interpreting the statute, but since the "interpretation" had no reasonable statutory basis, the court invalidated it.

For the same reasons, Emergency Operational Bulletin No. 85-1 must be held invalid. The Commissioner of the DHCR exceeded his power to administer the Rent Stabilization Law by in effect legislating a new class of persons entitled to a renewal lease.

The Commissioner alternatively contends that the power granted him to amend the Rent Stabilization Code (L 1985, ch 888) authorizes him to promulgate the emergency bulletin. As already indicated, this argument is also untenable. The statute authorizes the Commissioner to amend the Code only by following a prescribed procedure including submission to the Department of Housing Preservation and Development and public hearings. Concededly, no such steps were taken here. Therefore, the emergency bulletin cannot be deemed an effective amendment to the Rent Stabilization Code.

Moreover, the emergency bulletin was not promulgated in accordance with the procedures for rule making set forth in the State Administrative Procedure Act. *(See generally,* State Administrative Procedure Act art 2.) Even were the emergency bulletin to be construed as a valid enactment of an emergency measure pursuant to State Administrative Procedure Act § 202 (6), such an administrative measure could remain in effect for no longer than 60 days under this statute, and would be of no avail in this case.

In sum, there is no basis upon which the broad provisions of the emergency bulletin issued by the Commissioner of the DHCR can be sustained. Since the emergency bulletin is inoperative, the holding in *Sullivan v Brevard Assocs. (supra)* is controlling. The Court of Appeals having ruled that *no* family member, or any other relation, not named on a rent-stabilized lease is entitled to a renewal lease after the named tenant dies or otherwise vacates an apartment, defendant

Brown and other similarly situated "gay life partners" cannot claim that they are being denied equal protection of the law. Since the law, as it currently stands, fails to protect any family members who are not named in the lease as tenants, Brown cannot complain of being treated any differently. Under *Sullivan (supra)*, only the tenant may renew the lease, and Brown, not having occupied that status, is not entitled to a renewal lease.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Helen Freedman, J.), entered May 27, 1986, which granted defendant's motion for renewal and upon renewal recalled the prior decision of the court, granted defendant Brown summary judgment to the extent of awarding him a rent-stabilized vacancy lease, denied plaintiff's motion for summary judgment, and adjudged that Emergency Operational Bulletin No. 85-1 of the New York State Division of Housing and Community Renewal is validly promulgated, should be unanimously reversed, on the law, defendant's cross motion for summary judgment denied in its entirety, plaintiff's motion for summary judgment for possession granted, and Emergency Operational Bulletin No. 85-1 of the New York State Division of Housing and Community Renewal declared invalid, without costs.

MURPHY, P. J., KASSAL, ELLERIN and WALLACH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on May 27, 1986, unanimously reversed, on the law, defendant's cross motion for summary judgment denied in its entirety, plaintiff's motion for summary judgment for possession granted, and Emergency Operational Bulletin No. 85-1 of the New York State Division of Housing and Community Renewal declared invalid, without costs and without disbursements.