OPINION OF THE COURT
Per Curiam.
This holdover proceeding was brought by the petitioner East Four-Forty Associates, the proprietary lessee of the premises, against respondent Anthony J. Ewell, an alleged former licensee still in occupancy of those premises. Petitioner contends that the respondent cannot succeed to the rent-stabilized tenancy of the deceased tenant of record, respondent’s mother, Nancy Ewell Arent, who died March 3, 1985, and whose last renewal lease expired January 31, 1985.
The petition asserts, inter alia, that the respondent having been a licensee of his mother and that license having terminated upon her death, petitioner is entitled to a final judgment of possession, to an award of rent and/or use and occupation unpaid since March 1985 and to attorney’s fees. Respondent’s answer consists of specific denials, a first affirmative defense that the respondent is, in his own right, a "tenant” entitled to possession of the premises; a second affirmative defense that the petitioner improperly deprived respondent’s mother, before her death, of a two-year renewal lease — which should have extended from the January 31, 1985 expiration of her last renewal lease to January 31, 1987 — and consequently the respondent himself is properly in possession *237 of the premises; and a third affirmative defense and first counterclaim alleging that petitioner had constructive notice of respondent’s occupancy, that petitioner commenced this proceeding merely to harass respondent and that respondent is entitled to recover legal fees, compensatory damages, and punitive damages. After joinder of issue, petitioner moved and the respondent cross-moved for summary judgment. The motion court denied the respective motions, and both parties appeal.
The record before us, sparse as it is, reflects that in 1972 the apartment at issue was leased by the respondent’s grandmother, ostensibly for her own use, and the use of respondent’s mother and respondent. The respondent’s grandmother died in 1980 and the apartment was then leased by respondent’s mother, ostensibly for her own use and the use of the respondent. The respondent claims to have resided in the apartment since 1972; admittedly he was never party to a lease for the premises.
The respondent contends that his mother’s failure to execute a two-year lease renewal shortly before her death in 1985 resulted from the petitioner’s misspelling of her name as "Mrs. Nancy T. Ewell Ar” (instead of her correct name, "Mrs. Nancy T. Ewell Arent”) in a notice of intent to renew form and from petitioner’s failure, after notification, to correct this error before her death. The misspelling complained of, a trifling error at best, could have easily been corrected by respondent’s mother had she merely penned in her full name, executed the form indicating her intent to renew her lease, and returned the form to the petitioner. Even were we to accept the premise of the respondent’s second affirmative defense — that petitioner’s failure to properly offer his mother a renewal lease entitled him to remain in possession after the January 31, 1985 expiration of her last renewal lease and after her death — it is no longer a viable defense to this proceeding because, even deeming such a renewal lease to have been executed by her, it would have expired on January 31, 1987.
Respondent’s third affirmative defense and first counterclaim, based upon a claim of harassment, also fails. A bona fide dispute exists as to respondent’s entitlement to remain in possession of the premises after the death and expiration of the last renewal lease of the tenant of record. Thus it is respondent’s first affirmative defense — that he is a tenant by *238 virtue of succession rights to the subject premises — that we need address.[1]
But do succession rights of any sort exist in New York City rent-stabilized apartments? In two cases, Tagert v 211 E. 70th St. Co. (63 NY2d 818 [Oct. 9, 1984]) and Sullivan v Brevard Assocs. (66 NY2d 489 [Nov. 19, 1985]), the Court of Appeals indicates that they do not, and that landlords need offer renewal leases only to rent-stabilized tenants of record and need not offer renewal leases to family members of tenants of record upon the death or departure of tenants of record.
In Tagert (supra) the Court of Appeals held that upon the departure of the tenant of record, landlord was not obligated to allow tenant’s son and tenant’s son’s family to enter into possession for the remainder of the lease and/or for the period of the renewal term. In addition, the court in Tagert (at 821), in dicta, observed: "only the tenant may renew a lease; family members have no such right after the tenant has vacated (Administrative Code, § YY51-6.0, subd c, par [4]). Thus, while the lease provision may permit a tenant’s family to occupy an apartment with him, and allow those family members who actually live with him to continue in residence for the remainder of the lease term in his absence (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 61 NY2d 976), the lease provision does not permit family members to succeed to possession by moving into an apartment upon the tenant’s departure, and it does not require a landlord to renew a lease as an apartment is successively passed to members of the tenant’s family”.
Although the above-quoted declaration appears to be a dispositive statement that succession rights do not exist under the Rent Stabilization Law of 1969, the Court of Appeals in Tagert (supra) did not have before it a situation in which a family member had actually occupied premises contemporaneously with a tenant of record and remained in occupancy after the death or departure of the tenant of record. That circumstance, however, was squarely confronted by the Court of *239 Appeals in the Sullivan case (supra). In Sullivan, a sister of the tenant, who had occupied an apartment with the tenant, sought to succeed to the tenancy upon the tenant’s departure from the premises. Although the duration of contemporaneous occupancy of the premises by the tenant and her sister does not appear to have been for an extended period, the Court of Appeals eschewed any indication that its resolution of the appeal was predicated upon the limited period of their contemporaneous occupancy. Judge Kaye, writing for the unanimous court, began her opinion with the unqualified observation (at 490-491): "Under New York City’s Rent Stabilization Law, a landlord need offer a renewal lease only to a tenant of record, and is not obligated to offer a renewal lease to a relative of the tenant who occupies the apartment with the tenant during a portion of the lease term”.
As support for that unqualified proposition, the Sullivan court states that the New York City Rent Stabilization Law requires that a renewal lease be offered only to a "tenant” (citing Administrative Code of City of New York former § YY51-6.0 [c] [4], now § 26-511 [c] [4]), that no provision of law expands the definition of "rent-stabilized tenant” beyond the definition of "tenant” in a lease, and, indeed, that absent from the city Rent Stabilization Law is any definition of the term "tenant,” leaving only the lease definition of "tenant,” as indicative of those protected by the Rent Stabilization Law. As additional support for the proposition that succession rights do not exist in rent-stabilized premises, the Sullivan court observes that under the New York City Rent Stabilization Law landlords are only required to offer renewal leases to rent-stabilized tenants using the leased premises as their primary residence (Administrative Code former § YY51-3.0 [a] [1] [f], now § 26-504 [a] [1] [f|), and that "[u]nder the Rent Stabilization Law a Stabilization Code need only 'requir[e] owners to grant a one or two year vacancy or renewal lease at the option of the tenant’ (Administrative Code § YY51-6.0 [c] [4] [now § 26-511 (c) (4)])” (Sullivan v Brevard Assocs., supra, at 494; emphasis added).
Our courts have consistently recognized the existence of succession rights in premises regulated by the New York City Rent Control Law (see, Administrative Code former § Y51-3.0 [m], now § 26-403 [m]; New York City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d]; Matter of Herzog v Joy, 74 *240 AD2d 372).[2] The Court of Appeals in Sullivan (supra) addresses what might otherwise be viewed as an anomaly of recognizing succession rights in premises regulated by the Rent Control Law, but not in premises regulated by the Rent Stabilization Law, by observing that the Legislature deliberately foreclosed succession rights under the New York City Rent Stabilization Law in order to render that law, to that extent, less intrusive than the New York City Rent Control Law upon the interests of owners and developers. In that regard, the Court of Appeals stated (at 494-495): "Our refusal to ignore this scheme of the Rent Stabilization Law, in favor of concepts borrowed from the Rent Control Law, is consistent with the purpose and scope of rent stabilization, which is a less onerous form of regulation than rent control (8200 Realty Corp. v Lindsay, 27 NY2d 124, 136-137). Rent control subjects an ever-decreasing number of rental units to stringent controls. Rent stabilization, on the other hand, was adopted in 1969 as a 'compromise solution’ under which rents of previously unregulated post-1947 housing could be regulated while 'encouraging future construction of housing accommodations by allaying the fears of builders concerned about possible further extension of rent control to new construction’ (8200 Realty Corp. v Lindsay, 27 NY2d 124, 136-137, supra)”.[3]
In response to the holding of Sullivan (supra), i.e., that there are no succession rights under the New York City Rent Stabilization Law, the Commissioner of the Division of Housing and Community Renewal (DHCR) on December 10, 1985 issued Emergency Operational Bulletin No. 85-1, which purported to establish such rights. The emergency bulletin re *241 quired a landlord to offer a renewal lease to a rent-stabilized tenant and his or her immediate family, defined as "husband, wife, son, daughter, stepson, stepdaughter, father, mother,” and further required a landlord of rent-stabilized premises to offer "the right to first refusal of a new lease” at the maximum legal rent allowed, to a "non-immediate family member”, defined as "a brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, daughter-in-law” who has "continuously resided in the dwelling unit as a primary resident since the commencement of the tenancy, or beginning of the relationship.”
In Two Assocs. v Brown (127 AD2d 173 [Apr. 9, 1987], rearg denied App Div, 1st Dept, lv denied 70 NY2d 792), the Appellate Division, First Department, in a Per Curiam opinion, declared Emergency Operational Bulletin No. 85-1 to be invalid. In so holding, the Appellate Division observed (at 182-183): "in light of the clear language of the Rent Stabilization Law and the judicial construction of that language [see, Tagert v 211 E. 70th St. Co., 63 NY2d 818; Sullivan v Brevard Assocs., 66 NY2d 489] it cannot be said that, in issuing the emergency bulletin the Commissioner was merely interpreting or administering the existing regulations [i.e., the Rent Stabilization Code]. On the contrary, the bulletin’s 'rules’ are designed to extend the protection of the Rent Stabilization Law to parties the Legislature never intended to protect. The effect of the bulletin is not to define the existing word 'tenant’ in the regulations [i.e., the Rent Stabilization Code] governing lease renewals, a word that is unambiguous, but is rather to create a new law entitling a new broad class of people to a lease renewal”.
The Appellate Division rejected the DHCR’s contention that its power to promulgate the emergency bulletin entitling a new broad class of people to a lease renewal derived from its broad authority to administer the Rent Stabilization Law (L 1983, ch 403, § 3) in a manner which best effectuates the purpose of the statute. Specifically the Appellate Division observed in that regard (at 181-182): "the Commissioner’s authority to administer the Rent Stabilization Law does not include the authority to create new laws. . 'Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute’. (Matter of Jones v *242 Berman, 37 NY2d 42, 53; emphasis added; see also, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588)”.
The Appellate Division also rejected the DHCR’s alternative contention that authority given to the DHCR to amend the Rent Stabilization Code (L 1985, ch 888) entitled it to promulgate the emergency bulletin. In that regard the court stated that the DHCR, in promulgating the emergency bulletin, followed neither the procedural requisites necessary to amend the Rent Stabilization Code (including submission of proposed amendments to the city Rent Stabilization Code to the Department of Housing Preservation and Development for review, and public hearings on such amendments) nor the procedures for rule making set forth in the State Administrative Procedure Act (Two Assocs. v Brown, supra, at 184).
Effective May 1, 1987, the DHCR adopted a new Rent Stabilization Code for New York City. The new Rent Stabilization Code, in language similar to that of the emergency bulletin, defines "tenant” as: "Any person or persons named on a lease as lessee or lessees, or who is or are a party or parties to a rental agreement and obligated to pay rent for the use or occupancy of a housing accommodation” (Rent Stabilization Code [9 NYCRR] § 2520.6 [d]). The new code — in provisions strikingly reminiscent of the succession provisions of the emergency bulletin which had been struck down in Two Assocs. v Brown (supra) less than a month before the effective date of the new code — provides for succession to rent-stabilized premises by family members in case of death or vacatur of the tenant of record. A family member is defined as: "A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant or permanent tenant” (Rent Stabilization Code [9 NYCRR] § 2520.6 [o]). The code provides for succession under the following circumstances: "Except where occupancy is restricted by income limitations pursuant to State or Federal law or other requirements of governmental agencies, if an offer is made to the tenant pursuant to the provisions of subdivision (a) and such tenant has vacated the housing accommodation, any member of such tenant’s family, as defined in subdivision (o) of section 2520.6 of this Title, who has resided in the housing accommodation as a primary resident from the inception of the tenancy or commencement of the relationship shall be entitled to be named as a party to the *243 renewal lease” (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1]). "[I]f the tenant is deceased at the expiration of the lease term, such tenant’s family member who has not resided in the housing accommodation since the inception of the tenancy or the commencement of the relationship, but who has been residing with such tenant in the housing accommodation as a primary resident for a period of no less than two (2) years immediately prior to the death of the tenant * * * shall be entitled to a renewal lease” (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [2]).
Assuming the new Rent Stabilization Code was otherwise properly promulgated, do provisions of the new code purporting to create succession rights to rent-stabilized leaseholds succeed where the emergency bulletin failed? They do not. We must construe the Rent Stabilization Law as it was conceived by the Legislature, and in this regard the Court of Appeals has spoken. It is manifestly inappropriate for an administrative agency, no matter how worthy its motives, to disregard the intent of the Legislature — particularly where that intent has so recently and so clearly been construed by our highest court — and create through administrative fiat rights never contemplated by the Legislature (Matter of Jones v Berman, 37 NY2d 42; Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588; Matter of Council for Owner Occupied Hous. v Abrams, 125 AD2d 10; Council for Owner Occupied Hous. v Abrams, 135 AD2d 13).
Moreover, even putting aside what we perceive to be the patent inconsistency between the Rent Stabilization Law (as it has been construed by the Court of Appeals) and the succession provisions of the new code, we note that even the Legislature’s grant of authority to amend the Rent Stabilization Code was not general but circumscribed. Although the Rent Stabilization Law (Administrative Code former § YY51-6.0 [c] [1], now § 26-511 [c] [1]), as amended by Laws of 1983 (ch 403), in general terms provides that
"A code shall not be [approved] * * * unless it appears to the department of housing preservation and development [now the DHCR] that such code * * *
"provides safeguards against unreasonably high rent increases and, in general, protects tenants and the public interest”,
the authority granted by the Legislature to amend the Rent Stabilization Code is nonetheless specifically limited. The Rent *244 Stabilization Law (Administrative Code former § YY51-6.0 [b], now § 26-511 [b]) was amended by Laws of 1983 (ch 403, § 9; Omnibus Housing Act) to provide: "The stabilization code heretofore promulgated by such association, as approved by the department of housing preservation and development, is hereby continued. Such code may be amended from time to time, provided, however, that no such amendments shall be made except by action of the association subject to the approval of the department of housing preservation and development. No provision of such code shall impair or diminish any right or remedy granted to any party by this law or any other provision of law” (emphasis added).
The Rent Stabilization Law (Administrative Code former § YY51-6.0 [b], now § 26-511 [b]) was further amended by Laws of 1985 (ch 888), so as to transfer from the Real Estate Industry Stabilization Association, to the Commissioner of the DHCR, authority to amend the Rent Stabilization Code (after review by the Commissioner of the New York City Department of Housing Preservation and Development and after public hearings); however, the limitation that "No provision of such code shall impair or diminish any right or remedy granted to any party by this law or any other provision of law” (Administrative Code § 26-511 [b]) remained in full force and effect. The "succession provisions” of the new code violate the above-quoted proscription in that they impair and diminish the existing rights of owners by requiring them to offer renewal leases to persons other than tenants of record where previously they were under no obligation to do so. There is a conspicuous difference between, on the one hand, facilitating through administrative regulations rights and remedies existing under law, and, on the other, fashioning totally new rights in favor of some persons, the necessary consequence of which is the imposition of totally new obligations upon other persons.
Even were we to disregard the limited scope of the authority granted by the Legislature to the Commissioner to amend the code, the "succession provisions” of the new code constitute a breach of the separation of powers doctrine in that they represent an unconstitutional intrusion into the exclusive domain of the Legislature by an administrative agency (Boreali v Axelrod, 71 NY2d 1 [Nov. 25, 1987]; NY Const, art III, § 1). Boreali v Axelrod (supra) is particularly instructive as to what constitutes usurpation of legislative function by an administrative agency. In Boreali, the Court of Appeals struck *245 down a regulation promulgated by the State Public Health Council (PHC) that prohibited smoking in many public areas and many work places. The PHC promulgated the regulations there at issue pursuant to a general grant of authority (Public Health Law § 225 [5] [a], which authorizes the PHC to "deal with any matters affecting * * * public health”). The Court of Appeals held that notwithstanding the general grant of authority extended by the Legislature to the PHC to promulgate regulations designed to protect and foster public health, the controverted regulations adopted by the PHC intruded into a domain reserved exclusively for the Legislature. Judge Titone, writing for the majority, framed the issue as follows: "However facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits (see, Tribe, American Constitutional Law § 5-17, at 288-289). Even under the broadest and most open-ended of statutory mandates, an administrative agency may not use its authority as a license to correct whatever societal evils it perceives (see, e.g., Matter of Council for Owner Occupied Hous. v Abrams, 125 AD2d 10, supra). Here, we cannot say that the broad enabling statute in issue is itself an unconstitutional delegation of legislative authority. However, we do conclude that the agency stretched that statute beyond its constitutionally valid reach when it used the statute as a basis for drafting a code embodying its own assessment of what public policy ought to be” (at 9).
Judge Titone sets forth the elements signaling that the PHC, in adopting the controverted smoking regulations, transgressed "the difficult-to-define line between administrative rule-making and legislative-policy making” (Boreali v Axelrod, 71 NY2d 1, 11, supra) essentially as: (1) the PHC constructed a regulatory scheme laden with exceptions based solely upon economic and social concerns, (2) the PHC did not merely fill in the details of broad legislation describing the over-all policies to be implemented but instead "[writing] on a clean slate, creat[ed] its own comprehensive set of rules without benefit of legislative guidance,” (at 13), (3) the PHC acted in an area in which the Legislature had repeatedly tried — and failed — to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions, and (4) the PHC had no special expertise or technical competence in the field (cf., Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186 [Jan. 7, 1988]).
*246 Applying the criteria formulated by the Court of Appeals in Boreali v Axelrod (supra) to the case at bar, we see first, that the DHCR, in promulgating the succession provisions of the new code, constructed a regulatory scheme fashioned upon economic and social considerations. In defining "family”, and thereby establishing the predicate for the new code’s succession provisions, the DHCR while formulating an expansive definition of "family” within the parameters of relationship by blood and marriage, formulated what might well be characterized as a restrictive definition of "family” within the framework of contemporary social patterns, in which "non-traditional” family units and extended family relationships are prevalent.[4] The scheme so created by the DHCR is one which necessarily represents choices made on the basis of social and economic considerations. Second, the DHCR did not merely fill in the details of broad legislation describing over-all policies to be followed but, at best, "wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance” (Boreali v Axelrod, 71 NY2d 1, 13, supra) and, more accurately put, erased from the slate the scheme spelled out by the Legislature and substituted therefore its own set of rules conspicuously at odds with legislative guidance (Sullivan v Brevard Assocs., supra). Third, the DHCR in promulgating the succession provisions acted in an area that the Legislature has already considered in the face of substantial public debate and vigorous lobbying by a variety of interested factions (Sullivan v Brevard Assocs., supra). To the extent it may be argued that legislation in this area may be said to have succeeded or failed remains beyond the scope of our consideration. Lastly, it can hardly be seriously suggested that the DHCR has special expertise rendering it more competent than the Legislature to determine what, if any, succession provisions should be engrafted onto the Rent Stabilization Law.
DHCR argues in its amicus brief that the Appellate Division in Two Assocs. v Brown (127 AD2d 173, supra) held the DHCR possesses the authority necessary to fashion succession rights and may do so by "proper” amendment of the Rent Stabilization Code. Although the Appellate Division in Two Assocs. v Brown (supra, at 183) does state "The Commissioner [DHCR] *247 may not so act [to create a new law entitling a new broad class of people to a lease renewal] in the absence of a legislative amendment of the Law or without properly moving to amend the Code as specified in the Law” (emphasis added), we read "or” in that context as conjunctive. In other words, in the absence of an amendment to the Rent Stabilization Law by the Legislature expressly expanding the definition of "tenant” under the Rent Stabilization Law to include persons other than tenants of record and expanding rights afforded by the Rent Stabilization Law to such additionally included persons, it is our view that any attempt by the DHCR, in the form of an amendment of the Rent Stabilization Code or otherwise, to create succession rights must fail.
We do not question the motives of the DHCR in promulgating the succession rights provisions of the new Rent Stabilization Code. Nor should it be suggested that there are not arguments to be made for and against the expansion of succession rights under the Rent Stabilization Law. The potential hardship and dislocation for those in residence with a rent-stabilized tenant upon the death or departure of that tenant is all too apparent. Also apparent, however, is the vast array of alternative regulatory schemes that might be proposed in lieu of existing regulatory schemes, and each one of those conceivable variations, we submit, possesses its own distinct social and economic implications.
Regulation of interests in real property, including regulation of leasehold interests, involves regulation of the most basic of property rights. In particular, further regulation of New York City rent-stabilized leaseholds requires consideration, as a matter of public policy, of the appropriate allocation of a scarce and important resource, New York City rent-stabilized apartments. Whether and/or in what fashion to impose a scheme of rent regulation inevitably raises legitimate and complex concerns and provokes no end of controversy (Kanusher, All in the Family: Succession Rights and Rent Stabilized Apartments, 53 Brooklyn L Rev 213 [1987]). It is, in our view, manifestly inappropriate for an administrator or administrative agency, no matter how well intentioned, to become the formulator of such basic policy, and in that guise attempt to recast fundamental property rights and reallocate important resources.
Only the Legislature, as direct representative of the people, may — as it deems fit and within the parameters of constitutional law — address such basic rights and reallocate such *248 important resources (De Kovessey v Coronet Props. Co., 69 NY2d 448). Moreover, the Legislature has shown itself fully capable of amending the Rent Stabilization Law when it deems it appropriate to ameliorate the consequences of opinions of the Court of Appeals, and it has speedily acted in the past to safeguard the rights of persons in possession (Hudson View Props. v Weiss, 59 NY2d 733 [Real Property Law § 235-f (the "Roommate Law”)]; La Guardia v Cavanaugh, 53 NY2d 67 [Rent Stabilization Law (Administrative Code) § 26-506 (a), formerly Administrative Code § YY51-3.1, as amended by Local Laws, 1981, No. 39 of City of New York]). Thus, such consequences as may be occasioned by enforcing the Rent Stabilization Law as it has been construed in Sullivan v Brevard Assocs. (supra) are fully capable of being addressed by the Legislature, which is not inexperienced in reconciling competing interests and making difficult choices.
Accordingly, we hold that the succession provisions of the new code are invalid; we grant petitioner partial summary judgment upon its petition to the extent of awarding petitioner final judgment upon its cause of action for possession, and judgment, as to liability only, upon its cause of action for use and occupation; the proceeding is remitted to the Civil Court for calculation of the amount of use and occupation due. Since the respondent is not a signatory to the lease for the premises, he is not bound by the attorney’s fees provision thereof, and respondent’s cross motion for summary judgment is granted only to the extent of dismissing petitioner’s claim for attorney’s fees.
Order entered November 4, 1985 is modified to the extent of reversing so much thereof as denied in its entirety petitioner East Four-Forty Associates’ motion for summary judgment and as denied in its entirety respondent Anthony J. Ewell’s cross motion for summary judgment, and, as so modified, is affirmed, with $10 costs to the petitioner; petitioner’s motion for summary judgment and respondent’s cross motion for summary judgment are disposed of as follows: petitioner’s cause of action for possession is granted, petitioner’s cause of action for use and occupation is granted as to liability and remitted to the Civil Court for assessment, and petitioner’s cause of action for attorney’s fees is dismissed.
Issuance of the warrant of eviction shall be stayed for 60 days from the service of a copy of the order of this court with notice of entry.

. Although the events here reviewed, including the order appealed from, substantially predate the May 1, 1987 effective date of the State Division of Housing and Community Renewal’s (DHCR) recent "amendments” to the New York City Rent Stabilization Code, because of the potential relevance of the May 1, 1987 amendments to the code, this court requested and received from the parties supplemental briefs and had additional oral argument in June 1987. The DHCR also submitted a brief, amicus curiae, and participated in the June 1987 argument.

. Administrative Code of City of New York § 26-403 (m), formerly § Y513.0 (m) broadly defines a rent-controlled tenant as a "tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation”; New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d), formerly § 56 (d), and New York State Rent and Eviction Regulations (9 NYCRR) § 2104.6 (d), formerly § 56 (4), both provide that no rent-controlled occupant may be evicted "where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant”.

. We take judicial notice that in recent years there has been a paucity of rental housing constructed in this city; although some luxury rental accommodations have been built, most new luxury accommodations are being marketed as condominium and cooperative properties. However, whether "future construction” of the sort the Sullivan v Brevard Assocs. court suggests the Legislature intended to encourage through "compromise” has or has not materialized is immaterial to our consideration.

. The scheme formulated by the succession provisions is expansive in the context of relationship by blood or marriage in that it, for example, includes in-laws and step relations; it is restrictive in the context of other relationships, since it does not include heterosexual, homosexual, and platonic relationships.